BRYAN v. RAMIREZ et al.

| 8 | 461 |
|---|---|
| 122 | 664 |

A certificate of acknowledgment to a deed, in effect as follows: "Personally appeared, etc., A B, known to me to be the person described in, and who executed the same, freely, voluntarily, and for the uses and purposes therein mentioned," is insufficient.

Such a certificate does not state "the fact of acknowledgment."

When a person knowingly, though passively, looks on and suffers another to purchase and expend money on land under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to assert his legal right against such person.

And a purchaser of the legal title has notice of the equity of another in possession.

And where six persons held in common the legal title, one of whom was present and remained silent when the holder of the equity purchased, under the opinion that he was obtaining the title : Held, that the one-sixth of the legal title, in the hands of subsequent purchasers, was subject to that equity coupled with possession prior to their purchase.

APPEAL from the District Court of the Tenth Judicial District, County of Yuba.

This was a bill to quiet the title to two lots in the city of Marysville. The facts, so far as necessary to illustrate the points determined, were substantially these: On the twenty-second of April, 1850, Charles Covillaud, J. M. Ramirez, John Sampson, R. B. .Buchanan, and S. N. Swezy, conveyed the lots, with others, by deed absolute, to Joseph W. Finley, for a certain consideration thereafter to be paid. Finley executed to the grantors his three several promissory notes for the amount of the pur-

chase-money. On the twenty-seventh of July, 1850, Finley mortgaged the property to one Sparks, and on the twenty-eighth of November, 1850, Finley re-conveyed the property to Covillaud, Ramirez, Buchanan, Swezy, and William H. and C. B. Sampson, heirs of John Sampson, deceased. On the eighteenth of January, 1851, Swezy conveyed his interest to Ramirez and the two Sampsons. The deeds and mortgage were all acknowledged and recorded. Sparks obtained judgment of foreclosure against Finley on the twenty-fifth of June, 1851, and the property was sold by the sheriff and purchased by the plaintiff on the eighth of August, 1851, and a sheriff's deed duly executed and recorded. The plaintiff then took possession of the property, enclosed it with a fence, planted some trees, and paid the taxes, and has continued in possession ever since. By several conveyances from the other grantees, the title conveyed by Finley by his deed of re-conveyance, came to the defendants, who are now the only adverse claimants to the plaintiff.

The acknowledgment of the mortgage from Finley to Sparks omits to state that Finley "acknowledged that he executed" the instrument. The terms of the acknowledgment are set forth in the opinion of the Court. It was in evidence that Buchanan, Swezy, and one of the Sampsons, (it does not appear which,) were present at the sale without informing the plaintiff of their claim. At that time, Swezy and Buchanan had parted with their interest in the land.

The plaintiff had a decree in the Court below, and the defendants appealed.

*Field* for Appellants.

As to the alleged possession of the plaintiff of the lots in controversy, after sale by the sheriff, and improvements thereon, it appears that the possession consisted only of an enclosure by a fence, and the improvements consisted in the planting of some trees, which soon after died. And there is no evidence in the case that the defendants had any knowledge even of this, and they deny, in their answer, that they had any knowledge of such possession and improvements. The plaintiff never occupied the lots, nor were they occupied by any one.

The Supreme Court has recently decided, in the case of Mesick v. Sunderland, July Term, 1856, that it was the intention of the Registry Act of this State to establish one system of notices, and to substitute the constructive notice thus established, in place of all other kinds of notice, and thus to abolish the presumption of notice arising from possession.

So, as to the question of notice by the alleged possession, the appellants contend :

1. That whatever may be the doctrine as to constructive notice, by possession, under an executory contract, for the sale of

land, under our statute there can be no constructive notice of a deed, except such as is given by the registry, and to this effect is the decision of this Court, in Mesick v. Sunderland.

2. That there was no such possession arising from the simple enclosure by a fence—which is done even by squatters—and the planting of a few trees, so as to operate as notice, and break in upon the policy of the Registry Act.

3. Even if the plaintiff had taken and kept actual possession of the lots, after his purchase, yet such possession could in no way affect the title of the defendants, acquired nearly ten months previously, by a deed, which was recorded seven months previously, and which, by its record, imparted notice to all the world.

When possession is held as notice, it is of course only to subsequent purchasers, or mortgagees. It is absurd to say that it has, or can have any effect upon previous purchasers. But it is contended, and was so held in the Court below, that the defendants are estopped from setting up their title now, against the plaintiff, by neglecting to claim or assert it, at the sheriff's sale.

It was also contended, and it was so held in the Court below, that Sparks, by his alleged mortgage, had an equitable lien on the two lots, and that the defendants having taken a re-conveyance back to them of the lots, in consequence of the non-payment of the balance of the notes given by Finley, on the original sale, were not *bona fide* purchasers, for a valuable consideration, so as to hold the title as against the plaintiff, as a purchaser under the alleged mortgage.

The case then reduces itself to four questions :

*First*—Had the defendants any constructive notice from the record, of the alleged mortgage from Finley to Sparks, dated July 27, 1850?

Whether there was any constructive notice, depends upon the question whether the instrument was properly recorded; and whether it was properly recorded, depends upon the further question, whether it was acknowledged so as to entitle it to record.

The defendants contend that the certificate of the officer, of the execution of the mortgage, did not entitle it to record, inasmuch as it does not state that the execution was acknowledged by Finley to him.

It is essential to the validity of every certificate of acknowledgment, taken before the officer, that it should state two things :

1. Knowledge by the officer of the person executing the instrument, or that such person was proved to the satisfaction of the officer.

2. The fact of acknowledgment.

By the statute, then, to operate as notice, the instrument must

be recorded, but to entitle it to record it must be proved or acknowledged, and if acknowledged, the certificate must state the fact of acknowledgment.

*Second*—The rights of the defendants are in no way affected by the judgment recovered by Sparks against Finley, or the sale under it.

The defendants were strangers to the suit. 4 Cowen & Hill's notes to Philipps Ev., pp. 1 and 165, and authorities there cited; 1 Greenl., § 523; Jackson *v.* Verder, 3 Johns., p. 12; Phillips Ev., vol. 2, p. 4.

From these authorities it is clear that the title of the defendants, Ramirez and Charles B. Sampson, to their respective lots, is in no way affected by the instrument placed on the books of the recorder as a mortgage from Finley to Sparks, or by the judgment recovered by Sparks against Finley, and the sale under it.

*Third*—The defendants Ramirez and C. B. Sampson, are in no way estopped from asserting their title to the lots now by any alleged neglect to claim or assert the same at the sheriff's sale; and the ruling of the Court below is preposterously absurd.

1. At the time of the sheriff's sale, Mr. Ramirez, who claims one of the lots, was in Europe.

2. There is no evidence in the case whatever that Charles B. Sampson, who claims the other lot, was present at the sale, or ever heard of any such sale even.

3. Swezy had sold all his interest to Ramirez and the two Sampsons, in these and other lots, eight months previous.

4. There is no evidence whatever in the case, that the defendants ever knew, or heard, or saw, any improvements made upon the lots by the plaintiff, or by any one else, or that they ever even were in sight of the lots, and the finding of the Court below is mere assumption, unsupported by any evidence whatever in the case.

But even if the parties by the re-conveyance back became joint-tenants, notice to one is notice to all. One joint-tenant cannot dispose of his co-tenant's interest, and of course cannot by silence, on receipt of notice, affect his co-tenant's interest. 4 Kent, p. 374; side page 359, and note.

*Fourth*—The defendants were *bona fide* purchasers for a valuable consideration, of the lots, so as to hold the title against the alleged equitable lien of Sparks, by the alleged mortgage, or the title of the plaintiff as purchaser under that mortgage.

There was a change in their rights effected by this purchase back. Dickinson *v.* Tillinghast, 4 Paige, p. 221.

If the conveyance is taken in satisfaction or extinguishment of a previous liability, or as a mortgage, or if the rights of parties at the time or in consequence of the conveyance, subsequently, before notice of the prior equities are changed thereby,

then the grantee is a holder for value, and the property is unaffected by prior equities. Blanchard v. Stevens, 3 Cushing, 162; Swift v. Tyson, 16 Peters, 1; Brush v. Scribner, 11 Conn., 388; Holmes v. Smith, 16 Me., 177, 180; Morton v. Waite, 20 Me., 175.

*Charles H. Bryan*, Respondent, in person.

The whole case of appellants rests upon the isolated position that the acknowledgment of the mortgage to Sparks, is not a substantial compliance with our Registry Act.

There is everything necessary to ascertain the fact of acknowledgment. He knows the grantor, and knows that he freely and voluntarily executed the same. It is not absolutely necessary that the word "acknowledge" should be used, if we can gather from the certificate the fact that the notary knew that he executed the instrument freely and voluntarily, for the purposes mentioned in the deed.

If the notary knows him to be the man, and certifies that he knows that he did freely and voluntarily sign for the uses and purposes of the deed, does this not necessarily imply the fact of acknowledgment?

Could the notary know that he had freely and voluntarily executed the instrument without the acknowledgment of the party?

The identical word "acknowledge," need not be used where the language employed shows sufficiently that it was the free act and deed of the party. This is what is meant under section twenty-third of the act, that a substantial compliance is sufficient.

We say, that the pretended re-conveyance by Finley, to all of the defendants named, of these lots, with many others, was placed upon record before the sale took place; that a portion of those same defendants, grantees in the deed of re-conveyance, had actual notice of the sale; were there and saw it go on, and yet allowed innocent parties to buy the lots at fair valuation, without giving notice of their pretended title to the property; they have all been residents of the same town since; have stood by and permitted the respondent to hold adversely to them for many years, to fence, improve, pay taxes, and expend money upon the lots, without one word of caution, or notice to him of claim of title, until the property had largely advanced in price, and after the lapse of years.

Upon such facts in equity, they are absolutely estopped from setting up title against an innocent purchaser in possession; even if the acknowledgment was defective, which we deny. Hatch v. Kimball, 16 Maine, 146; Colby v. Norton, 19 Maine, 912; 10 Ohio, 298; 1 Johns. Ch., 353; 4 and 5 Munroe, Ky., 196, 197; Godfrey v. Caldwell, 2 Cal., 492.

If the acknowledgment of the mortgage from Finley to Sparks

be so defective, 'as not to entitle the same to registry, yet no one would contend that that circumstance destroyed the sale, and that the purchaser had not the equitable title under such a mortgage, after judgment, levy, and sale.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

The first objection urged against the title of the plaintiff is, that the certificate of acknowledgment endorsed upon the mortgage is fatally defective. The acknowledgment was in this form :

STATE OF CALIFORNIA,   }
   County of San Francisco. } *ss.* .

On this twenty-seventh day of July, A. D. one thousand eight hundred and fifty, personally appeared before me, a notary public in and for said county, Joseph W. Finley, known to me to be the person described in, and who executed the same freely and voluntarily, for the uses and purposes therein mentioned. In testimony, etc.

The statute requires the certificate to be substantially in the form given in the eighth section, and the only question to determine is, whether this certificate is a substantial compliance with the statute. The seventh section provides that the certificate " shall state the fact of acknowledgment."

The certificate in this case, simply states, that the person was known to the officer to be the person who executed the mortgage, freely and voluntarily, for the uses and purposes therein mentioned. The officer states *his* knowledge of the manner in which the instrument was executed, but does not state " the fact of acknowledgment." The officer is bound to know the identity of the person, but is not expected to know anything as to the manner of its execution. It is " the fact of *acknowledgment"* that forever afterwards binds the party. Although a man may not execute the instrument freely, in point of fact, yet if he make the acknowledgment properly, he is afterwards estopped to deny it, as against subsequent innocent parties. The object of the statute was to make the acknowledgment of the party operate as an estoppel, and for that reason, requires the fact of acknowledgment to be stated in the certificate.

But, conceding that the certificate was defective, and that the record of the mortgage was not notice to the defendants, the plaintiffs insist that they are not innocent purchasers for value. The defendants proved that the consideration for the deed of re-conveyance was " the non-payment" of two-thirds of the purchase-money. Finley had paid one of the three notes given for these and other lots ; and failing to pay the other two, the vend-

ors took from him a deed of re-conveyance. It is insisted by the plaintiff that the proof does not show that the two notes were delivered to Finley. But we think the evidence shows this substantially.

Another ground urged by plaintiff against the title set up by defendants, is that one of the Sampsons, Buchanan, and Swezy, were present at the sheriff's sale, and suffered the plaintiff to purchase in ignorance of the adverse claim, and, therefore, that the defendants cannot, in a Court of Equity, be allowed to set up their title.

The rule is well stated in the opinion of the Chancellor in the case of Wendell *v.* Van Rensselaer, 1 Johns. Ch. Rep., 354: "There is no principle better established in this Court, nor one founded on more solid considerations of public utility than that which declares that if one man knowingly, though he does it passively, by looking on, suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person."

In reference to this subject, Mr. Justice Wood, in delivering the opinion of the Supreme Court of Ohio, in the case of Buckingham and others *v.* Smith and Dille, 10 Ohio Rep., 298, uses this concise and forcible language :

"The rule is, if one is silent when he *should* speak, that justice will compel him to silence when he *would* speak."

But conceding that the conduct of Sampson would have estopped him from asserting his title as against the plaintiff, how far would the defendants be affected as *subsequent* purchasers in good faith, and for value. In reference to Swezy, his title had been previously conveyed to others, and he was a stranger at the sale, and his conduct could bind no one but himself, if it could bind him. And as to Buchanan, he had previously, on the fourteenth of September, 1850, transferred his interest in the notes of Finley, and the lots for which they were given, by written agreement, to Ramirez, and, therefore, had no interest in the property.

When a party has an equity, and also actual possession of the property, a purchaser of the legal title is bound to take notice.

The law permits an equity to exist, but does not require or permit it to be recorded ; and when the party holding the equity does all the law will permit him to do, his equity will be protected, and all who purchase of a grantor, *out of possession,* must take notice. This point is very fully considered, in my opinion, in the case of Bird *v.* Dennison, April, 1857 : "Possession under an equitable claim, infects the purchaser of the legal title, with notice of that equity." 4 Monroe Ky. Rep., 196 ; 5 Johns. Ch. R., 33.

If, then, it be true that defendants, in contemplation of law,

had notice of plaintiff's equity, they must be affected in the same *way*, and to the same *extent*, that Sampson would have been had he still retained his title.    The conveyance from one of the Sampsons was executed after the plaintiff had possession, and therefore the purchasers took with notice of the plaintiff's equity.

There was no proof that Ramirez, Covillaud, and *both* of the Sampsons, were present at the sale, and the conduct of the other Sampson could not affect them as to *their own* title.    Even had it been shown, that Ramirez, Covillaud, and one of the Sampsons, knew that the sale would take place, and failed to attend, their existing rights could not be prejudiced thereby.    The defect in the certificate of acknowledgment endorsed upon the mortgage, was legally known to the plaintiff, and as no title had thereby passed from Finley, as against subsequent purchasers, all parties claiming under the mortgage, were bound by the record of the deed of re-conveyance from Finley to his original grantors.    It was not, then, incumbent upon those not present at the sale, to give any further notice to the plaintiff.    A party having recorded his title in such a case, could not be required to know of, or attend any sale that might take place.    If *present* at the sale, and he remains silent, and knowingly permits another to purchase under an erroneous impression as to the title he buys, then he would be culpable, and be held responsible accordingly.

So far, then, as regards the *original* purchase of the plaintiff, there is no proof that Ramirez, Covillaud, and one of the Sampsons were at all to blame.    And as to the alleged conduct of the defendants, subsequent to the sale, in permitting plaintiff to expend money in making improvements upon the property without any known objection, there is not sufficient evidence to put them in the wrong.    The plaintiff could only resist the title of defendants, so far as it is affected by *their own* conduct, by showing actual fraud on their part, and entire innocence on his own. To prove fraud, the evidence should be strong and decisive.    The fact that the defendants were residents of the place would no more show that they *knew* the plaintiff was ignorant of their claim, than the fact of the plaintiff's residence would be proof that he *knew* of the record of their deed.    From the evidence, it would seem most probable, that both parties knew of the claims of each other, and both were doubtful as to the sufficiency of the certificate to the mortgage; and neither party was willing to go into an expensive lawsuit upon a doubtful title, until the property became valuable.    The defendants having put their deed on record, the plaintiff was affected with notice, and he was himself negligent.    If he could have shown any positive misconduct on the part of the defendants, or any actual concealment on their part, then there would have been some ground for redress. The improvements put upon the property, were not such as to

give notice that the party making them acted under the *bona fide* belief that he had an actual existing title.

The result of the view we have taken, is this: The defendants are not entitled to set up against the plaintiff any title they, or either of them, have derived from one of the Sampsons. And as there is certain proof that *one* of the Sampsons was present, though it is not shown which, yet it is shown, that the present defendants hold the same title that the one present did *then* hold; so the result is the same as if it were shown which of the two were present. The plaintiff is therefore entitled to whatever legal title was in *one* of the Sampsons, at the time of the sale.

The decree of the Court below is reversed, and that Court will render a decree in conformity with this opinion.