[Sac. No. 382.   Department One.—December 16, 1898.]

## A. G. STONESIFER et al., Appellants, v. PARIS KILBURN et al., Respondents.

REFORMATION OF DEEDS—AGREEMENT FOR ACREAGE—MISTAKE IN DESCRIPTION — CHANGE OF POSSESSION — NOTICE OF EQUITABLE TITLE.—An agreement to convey a specified number of acres of land out of a larger tract, at a fixed price per acre, vests the equitable title to that quantity of land in the purchaser; and where, by mutual mistake in description, the deeds to adjoining purchasers did not include the quantity of land specified, and by consent of the grantor and grantees, the possession of each grantee was changed, so as to give to each actual possession of the full acreage sold pursuant to a survey made for that purpose, and, under an oral agreement that the grantor should execute new deeds accordingly, a perfect equity became thereby vested in each grantee; and a court of equity will reform such a deed, and compel a conveyance from a subsequent grantee of the legal title, who took with notice of the equitable title.

ID.—POSSESSION AS NOTICE OF EQUITY.—Where a party has an equity, and also actual possession of the property, a purchaser of the legal title from the grantor out of possession is bound to take notice of the equity; and the result should be the same, whether the possession is deemed to impart notice *per se,* or is treated as evidence of notice.

APPEAL from a judgment of the Superior Court of Stanislaus County and from an order denying a new trial.   Matt F. Johnson, Judge.

The facts are stated in the opinion of the court.

Edward J. Pringle, and C. A. Stonesifer, for Appellants.

William Matthews, and C. C. Wright, for Respondents.

VAN FLEET, J.—Appeal by plaintiffs from the judgment and an order denying a new trial.   The action is one to quiet

title to a parcel of land which is within the calls of the deed under which plaintiffs claim title, but is held in possession by the Kilburns under a claim of equitable title thereto.

As disclosed by the findings the material facts are these: William S. Chapman, the owner of a tract of some five thousand acres in the Orestimba grant, or rancho, in Stanislaus county, in the year 1868, in pursuance of an agreement theretofore made by him with S. and E. Randall and Paris and Guy Kilburn to sell them two thousand and forty acres of said land at the rate of ten dollars per acre, and upon payment of the purchase price of twenty thousand four hundred dollars in full, made two deeds, one to the Randall brothers and the other to the Kilburns, each describing by metes and bounds a tract intended to, and designated as containing one thousand and twenty acres, the two deeds being designed to cover together the whole amount to be conveyed—the Randall deed calling for land on the north end of the Chapman tract, and that of the Kilburns a tract immediately adjoining the Randalls on the south. Possession was immediately taken by the grantees thereunder. At this time it was supposed and believed by all the parties to the deeds that the instruments carried the full acreage designated in each; but subsequently, in 1872 or 1873, it was discovered that there was a deficiency of land in each deed—amounting in the Randall deed to something over one hundred acres, and in the Kilburn deed to over thirty acres. This fact being brought to the attention of Chapman, he agreed with his grantees that the mistakes in quantity should be corrected by the Kilburns surrendering to the Randalls sufficient land on their north line to make up the deficiency to the Randalls, and that the Kilburns should recoup from the land of Chapman on the south by moving their south line over on to the land still owned by Chapman sufficiently to make up to them the amount so surrendered, together with the amount of the deficiency in their deed, and thus give to each their full quantity of one thousand and twenty acres.

To accomplish this purpose Chapman procured an accurate survey of the land to be made; and, immediately upon the running and marking of the lines thereof in the field, directed and requested his grantees to change their respective lines of possession in accordance therewith, which they accordingly did;

Chapman promising to thereafter make new deeds to conform to such survey. The findings show that the Kilburns, "at the request and on the faith of the agreement of Chapman, and relying thereon," gave up and surrendered to the Randalls the quantity of land required to make up their deficiency, and placed them in possession thereof, and that they and their successors have since held and possessed said land as their own; that at the same time the Kilburns, in pursuance of the said agreement, and relying upon the promise of Chapman, moved their south line over on to the Chapman land in conformity with said survey, and took possession of the parcel of land in dispute, and have since held and possessed the same, claiming to be the owners thereof, against the plaintiffs and all other persons, and have continuously since "subjected the said tract of land and the whole thereof to their will and control; have cultivated the same and pastured the same, used the same for a supply of fuel and fencing material, and for the ordinary use of the occupants, and have built fences thereon and valuable improvements, and have enclosed a large part thereof."

This change of possession was effected in November, 1873, but it appears that Chapman has never made a new deed to the Kilburns.

In 1885 Chapman sold his land to the south of the Kilburn tract to Montgomery, the deed covering by its terms the parcel of land in dispute; Montgomery conveyed to Page, and the latter, in 1887, sold to the plaintiffs, each of said parties paying an adequate and valuable consideration, and, as found by the court, "believed that they could rely, and they did rely, upon the description of the land of the Randalls and the Kilburns as the same appeared from their deeds of record in the office of the county recorder of Stanislaus county, as also the description of the land of Chapman as the same then appeared from his title papers as recorded in said recorder's office; but that at the same time each of them had notice of the possession and equitable title of the Kilburns." And in a mixed finding of law and fact the court found, "that at the commencement of the action the legal title to the disputed premises was vested in the plaintiffs; but that the equitable title to the land in dispute, which is included within the description in the complaint, was then vested in de-

fendants, the Kilburns, who were then in possession and entitled to the possession of said disputed land."

As a conclusion of law, the court held that the deed from Chapman to the Kilburns should be reformed so as to include the land in dispute; and that the plaintiffs should execute and deliver a deed sufficient in form and substance to convey to the Kilburns, and their grantee, Jeanette Kilburn, the legal title to said land.

Although questioned by appellants in some particulars, we are satisfied that there was sufficient evidence to warrant the findings in all material respects; and upon those findings we think the judgment was clearly right. The facts make out a perfect equity in the Kilburns to the relief granted. Appellants contend that there was no direct promise by Chapman to reform the Kilburn deed which was capable of enforcement; that whatever the terms of that promise it was at best but executory, and was recalled by the conveyance to Montgomery. But while the promise was not in express terms to reform either of the deeds in question, such was the necessary effect and implication as to the intent of Chapman from his acts, which were accepted and relied upon by both the Randalls and the Kilburns, and upon the faith of which the latter parted with and surrendered a valuable part of the premises originally conveyed to them. The agreement by Chapman was not wholly executory, but was an executed agreement in all respects except the passing of the deeds necessary to complete it; nor is there anything to necessarily indicate that Chapman intended to recall his promise by his subsequent conveyance to Montgomery, even could he have been permitted to do so. For more than ten years prior to that conveyance he had, with knowledge of the facts, acquiesced in the change of possession effected at his instance and direction; and that he had no intention of revoking such promise is shown by the terms of his conveyance to Montgomery, wherein he excepted "two thousand and forty acres conveyed by said Chapman to Randall and Kilburn." It is not material that no reformatory deed has ever passed from Chapman to the Kilburns. At the time of this transaction the rights of no one other than the grantor, and his then grantees, were involved, and, as aptly stated in the opinion of the learned judge of the court below:

"The agreement to convey two thousand and forty acres of land at the price of ten dollars per acre vested the equitable title to that quantity of land in the purchasers; and, as by mutual mistake the deeds executed in pursuance of the agreement do not include all the land intended to be conveyed, a court of equity will reform the deeds so as to include the land intended. (Citing cases.)   Then, as a court of equity would reform the deeds so as to give effect to the contract according to the intention of the parties by correcting the mistake, there is, and can be, nothing in the policy of the law to prevent the parties from doing equity between themselves by agreeing to correct the mistake."

But it is urged that the Kilburn deed cannot be reformed as against the appellants, for the reason that the finding that plaintiffs and their predecessors purchased with notice of the equitable rights of the Kilburns is based solely upon the fact that the latter held possession of the disputed premises, which fact is not the equivalent of notice, either actual or constructive, but only a fact tending to prove notice; that there is nothing to show any actual notice, and plaintiffs and their grantors, being *bona fide* purchasers for value, cannot be affected by anything less than that.   But the finding of the court must be construed as a finding that plaintiffs and their predecessors had actual notice of the rights of the Kilburns; and, as we have suggested, there was evidence to sustain that finding.   The objection may best be answered in the language of the learned judge of the court below, from which we again quote: "The fact that the Kilburns had been in the actual, exclusive, and notorious possession of the land under the parol agreement from early in 1873 to the time this action was commenced, and had fenced, cultivated, and improved the greater portion of it, with the line between the Kilburn and Chapman possessions distinctly marked, and the fact that the agent of Chapman and the agents of Montgomery in leasing the lands to the south of the disputed strip or piece recognized and acquiesced in that line, and when Montgomery conveyed the land to Timothy Paige, April 11, 1887, he delivered to him a lease which had been made by the agent of Montgomery of the land to the south of the land in dispute which did not assume to include the land in dispute, are circumstances sufficient to justify the inference that the plaintiffs

and their grantors had notice of the equitable title of the defendants, Kilburns. It is said in *Bryan v. Ramirez,* 8 Cal. 461, 68 Am. Dec. 340, that 'where a party has an equity and also actual possession of the property, a purchaser of the legal title is bound to take notice. The law permits an equity to exist, but does not require or permit it to be recorded; and when the party holding the equity does all the law will permit him to do, his equity will be protected, and all who purchase of a grantor out of possession must take notice.' The principle of equity jurisprudence announced in *Bryan v. Ramirez, supra,* has been asserted in many subsequent cases, but differently expressed. In some of them such possession has been held to impart notice *per se;* but in others such possession was treated as evidence of notice only. The result, however, should be the same in either view. (Citing cases.) There are other circumstances tending to show notice to the subsequent purchasers, and the facts bring this case within the authorities cited. The plaintiffs, and their grantor, Paige, and his grantor, Montgomery, having purchased with notice of the equitable title of the defendants, Kilburns, the parol agreement made by Chapman must be specifically enforced against them. This principle of equity is sustained by all the cases. (Civ. Code, sec. 3395; *Peasley v. Hart,* 3 West Coast Rep. 623.)"

These are the only considerations to which we deem it necessary to give particular attention. There are some others urged, but we do not regard them as material. The errors of law assigned are not specially urged. We have examined them, but do not discover that they present any obstacle to sustaining the action of the court below.

The judgment and order are affirmed.

Garoutte, J., and Harrison, J., concurred.

Hearing in Bank denied.