[Civ. No. 927. Third Appellate District.—April 16, 1912.]

DUDLEY KINSELL, Appellant, v. RICHARD THOMAS and MARY ISABEL THOMAS, Respondents.

ACTION BY GRANTEE OF HUSBAND TO QUIET TITLE TO LOT ON HOMESTEAD —PAROL GIFT—IMPROVEMENTS—EQUITABLE DEFENSE AND CROSS-COMPLAINT—RELIEF.—An action by a grantee of the surviving husband to quiet title to a town lot, forming part of homestead property, which appears to have been given by parol gift of both husband and wife to their son, who had previously rendered services for their benefit, which lot was, at that time, of the value of only $75, under an agreement that he was to fence and improve the same, which he did to the extent of $1,500, is not tenable in equity; but the son may plead such equitable facts by way of answer and cross-complaint, and the court may quiet his title thereto, and adjudge a conveyance of the legal title, either by the plaintiff, or otherwise, by a commissioner's deed.

ID.—RIGHTS OF SPOUSES IN HOMESTEAD—JOINT, LEGAL OR EQUITABLE ACTION ESSENTIAL—SUPPORT OF FINDINGS AND JUDGMENT ENFORCING EQUITY—CONFLICT.—Neither of the spouses can, in law, grant any rights in the homestead property without the consent of the other; and neither of them can create an equity therein by parol gift, without the consent of the other. Yet, where it appears that

an executed parol gift of a lot thereon was made by the joint act of both husband and wife to their son, for a consideration previously received from him, and also his fencing and improving the same for a home, which he did at great expense to himself, equity will protect such executed parol gift; and findings and a judgment enforcing them will not be disturbed, notwithstanding a conflict of evidence, where there is sufficient evidence to support the findings.

Id.—Notice of Defendant's Equity to Plaintiff—Want of Purchase in Good Faith—Consideration of Deed—Presumptions.—Where the defendants, husband and wife, were in undisputed possession of the lot in controversy when the plaintiff obtained a deed thereof from the father, such possession of an improved and fenced lot was sufficient to put the grantee upon inquiry as to their rights in the premises, and to charge him with notice thereof. And where there is no evidence to rebut the presumption that the recital of $10 in the deed was the sum actually paid by the plaintiff to the father for the son's lot and improvements, it must be presumed that that was all that he paid therefor; and it must also be presumed that he took such conveyance with full notice of the legal and equitable rights of the son, and in subordination thereto.

Id.—Equitable Rights of Son to Improvements—Condition of Equitable Relief.—Whatever may be said of the legal rights of the son, and even if it should be supposed that one of the spouses failed to consent to the gift, yet inquiry would have shown either that he possessed a valid title thereto, or that he was made to believe, and therefore honestly believed, that he owned such title, and under such belief made expensive improvements, which, under the circumstances, vested in him an equity in the premises, of which he could not wantonly be divested or deprived without reimbursement or compensation,. as a condition precedent to the right of the plaintiff to the equitable relief sought by him. He cannot have equitable relief without doing equity.

Id.—Parol Gift of Homestead—Enforcement in Equity.—A parol gift of real property by the husband and wife, for whose benefit a homestead has been declared on the property, and is in existence at the time of such gift, may and will be enforced by a court of equity when the circumstances of such gift are similar to those under which a like gift of real property not impressed with a homestead will be enforced.

Id.—Ground of Equitable Relief—Statute of Frauds—Estoppel from Standing on Legal Rights—Prevention of Fraud.—Equity does not grant relief respecting parol gifts of land on the ground that the agreement for a writing under the statute of frauds should be dispensed with. It regards the writing as of binding force in law, but acting *in personam,* and operating upon the consciences of the parties to such agreements, equity merely says that a party

to such parol gift will be estopped from standing on his legal rights in support of his refusal to carry out the parol agreement, where the circumstances disclose that such conduct on his part would be unconscientious and work a fraud upon the rights of the other party.

APPEAL from a judgment of the Superior Court of San Mateo County. Geo. H. Buck, Judge.

The facts are stated in the opinion of the court.

Vance McClymonds, and Mastick & Partridge, for Appellants.

Ross & Ross, for Respondents.

HART, J.—This action was brought for the purpose of quieting plaintiff's title to a certain piece or parcel of land situated in the town of Spanishtown, in the county of San lant.

The complaint alleges that the plaintiff is the owner in fee of the real property described in the complaint, and that the defendants claim some estate or interest in said property, which claim "is without right or merit, and said defendants have not, nor has either of them, any right, title or interest in or to said property, or in or to any part thereof."

The answer alleges that the property described in the complaint was a portion of a twenty acre tract of land which, for many years prior to the year of 1904, belonged to the parents of the defendant, Richard Thomas, the legal title to said land standing in the name of his father, Joseph S. Thomas; that "for more than four years prior to the year 1904 the defendant Richard resided on said parcel of land with his said parents, and during the last four years of his so residing thereon with his said parents, being then of the age of twenty-one years and upward, rendered and performed labor and services for his said parents in the care and cultivation of said parcel of land." The answer further avers that the parents of Richard, desiring to compensate the latter for the services so performed by him, proposed to him that they would give him the piece of land described in the complaint, and "that he might and should erect and place improvements on said last-named parcel of land and thereby

increase the value thereof, and have a home for himself thereon, and requested the defendant Richard to take possession thereof and fence the same and place a house and barn and other buildings thereon, and improve said parcel of land." It is further averred that Richard accepted the proposition thus made to him, and that, with the knowledge and consent and active assistance of his parents, he purchased a dwelling-house, which was located on the opposite side of the road from the land in question, moved said house to and on said land, made additions thereto, inclosed said land with a fence, erected a stable thereon, "and filled in said lot with soil and gravel, and very largely increased the value of said parcel of land"; that at the time said land was so given to the defendant Richard the same did not exceed in value the sum of $75, but that, by reason of the improvements made thereon by said Richard, as described, and of additional improvements made thereon by him (such as filling it in, sinking a well and the planting of trees and shrubbery thereon), said land increased in value from the said sum of $75 to the sum of $1,500 or more; that after the gift of said land under the circumstances thus disclosed, the defendant Richard, for a period of more than one year, performed for his parents further and other labor and services, for which he received no compensation otherwise than through the gift of said land.

In the month of June, 1909, so the answer proceeds, the mother of Richard died, and thereafter, for a long period of time, the father of Richard went to the home of the latter and there resided and was cared for and supported by said Richard without compensation therefor. The answer charges that, on the twenty-eighth day of June, 1909, the said father of the defendant Richard (Joseph S. Thomas) conveyed the land in controversy to plaintiff, and that the last named "took and accepted said conveyance with full knowledge of all the facts hereinbefore mentioned, and then and there knew that the said defendants were in the actual possession of, and residing upon, and occupying, said land, claiming to own the same under and by reason of said gift thereof by the parents of said defendant Richard to him, said Richard."

Upon the special defense thus pleaded the defendant asks for affirmative relief, praying for a judgment and decree of

the court "that plaintiff take nothing in said action; that the title of the defendants to said parcel of land be quieted as against the plaintiff in said action; that the plaintiff be enjoined and restrained from asserting any right, title or interest therein adverse to the defendants, or either of them," etc.

The defendant Richard also filed a cross-complaint, the averments of which are substantially the same as those of the answer, but, in addition to the relief prayed for in the answer, he asks for a judgment "decreeing that said plaintiff holds the legal title to said parcel of land in trust for said defendant and cross-complainant; that said plaintiff be ordered and decreed to make, execute and deliver to said cross-complainant a good and sufficient conveyance of all of said parcel of land; that in the event said plaintiff shall fail or neglect to so execute a good and sufficient conveyance thereof, that a commissioner be appointed by this court to make, execute and deliver to cross-complainant a deed thereof."

The court found the facts as alleged in the answer and the cross-complaint to be true, and rendered judgment accordingly, and therein named the clerk of said court as a commissioner for the purpose of executing a deed conveying a legal title to the disputed land to the defendant, Richard Thomas, in case the plaintiff failed to so execute a conveyance of said land.

This appeal is brought here by the plaintiff from said judgment on a bill of exceptions.

The plaintiff claims title to the property described in his complaint by virtue of the deed executed by Joseph S. Thomas, the father of the defendant Richard, on the twenty-eighth day of June, 1909, conveying said property to said plaintiff.

There was a homestead on all the land of which the parcel in dispute was a part, but the deed from Joseph S. Thomas to the plaintiff was executed after the death of the wife of the grantor.

The sole question presented here is whether the evidence supports the vital findings. The principal contention in this regard is founded upon the proposition that, it appearing that the land of which the property in controversy was a part was, at the time of the alleged gift, impressed with a homestead, executed and filed for record by both the parents of Richard,

·on the thirteenth day of May, 1879, the evidence neither shows that the defendant's mother joined his father in the alleged gift nor that the latter, after the death of Richard's mother, made the gift, and that, therefore, the purported transfer is absolutely void.

It will, of course, not be disputed as a well-settled legal proposition in this state that "neither spouse can alienate or encumber the homestead without the joint act of the other, and that the effort so to do is a nullity, and will not be validated by a subsequent dissolution of the marriage or termination of the homestead." (*Lange* v. *Geiser*, 138 Cal. 682, [72 Pac. 343]; *Gleason* v. *Spray*, 81 Cal. 217, [15 Am. St. Rep. 47, 22 Pac. 551]; *Powell* v. *Patison*, 100 Cal. 238, [34 Pac. 677]; *Hart* v. *Church*, 126 Cal. 471, [77 Am. St. Rep. 195, 58 Pac. 910, 59 Pac. 296]; *Friermuth* v. *Steigleman*, 130 Cal. 392, [80 Am. St. Rep. 138, 62 Pac. 615]; *Payne* v. *Cummings*, 146 Cal. 431, [106 Am. St. Rep. 437, 80 Pac. 620].)

Nor will the proposition be questioned that a parol gift of real property, under certain circumstances or conditions, will be sustained by courts of equity. In *Bakersfield* v. *Chester*, 55 Cal. 102, our supreme court concisely states the rule as follows: "A gift of real estate may be made by parol if possession is given and taken under such gift and acts done by the donee to carry out the purpose of the gift."

In *Anson* v. *Townsend*, 73 Cal. 417, [15 Pac. 49], the court says that "it is, of course, settled law that courts will compel the specific performance of parol contracts for the sale of real property where there has been a part performance of the contract, and parol gifts will be enforced under like circumstances and conditions as parol sales."

In *Neale* v. *Neale*, 9 Wall. 1, [19 L. Ed. 590], the court says: "Equity protects a parol gift of land equally with a parol agreement to sell it if accompanied by possession and the donee, induced by *a promise to give* it, has made valuable improvements on the property, and this is particularly true where the donor stipulates that the expenditure shall be made, and by doing this makes it the consideration or condition of the gift." (See, also *Freeman* v. *Freeman*, 43 N. Y. 34, [3 Am. Rep. 657]; *Burlingame* v. *Rowland*, 77 Cal. 315, [1 L. R. A. 829, 19 Pac. 526]; *Riggles* v. *Erney*, 154 U. S. 244, [38 L. Ed. 976, 14 Sup. Ct. Rep. 1083]; *Townsend* v. *Vander-*

*werker,* 160 U. S. 171, [40 L. Ed. 383, 16 Sup. Ct. Rep. 258];
*Calanchini* v. *Branstetter,* 84 Cal. 253, [24 Pac. 149].)

It is manifestly true that if the evidence in the case at bar
does not show that the parents of Richard joined in the gift of
the land in dispute to him, then the position of appellant is
correct, since the attempted transfer of property upon which
there subsists a homestead, selected by the head of the family,
by one of the spouses only would be absolutely void.

If, on the other hand, the evidence sustains the findings
upon which the decree is planted, viz., that the transfer was
by the joint act of the parents, then, obviously, the judgment
cannot be disturbed. The only question, then, is whether the
evidence supports those findings. We are of the opinion that
it does, as we think must be made plainly to appear by an
examination of the facts as proved.

The defendant, Richard Thomas, in substance, testified that,
from the time he was sixteen years of age up to the time he
was given the land in question, and for several years after
he had reached his majority, he worked and performed ser-
vices for his father; that he had a number of conversations
with his father and mother in reference to compensation for
such services; that they often said to him, "why didn't I
build a house to live in"; that, while he was living on the
"Cardoza place," where he was farming seven acres of
ground, his father asked him "why did I rent a place like
that for? I should be home. I said, 'No, I want to be by
myself. I have a horse of my own.' He said, 'You need not
do that; I will give you that corner,' '' referring to the land
in question; that he (the father) "would give it to any one
of the boys that would build there, because he wanted to have
some of the boys alongside of him. *My father and mother told
me to go ahead and do it.*'' After some hesitation, Richard
accepted the gift of the land thus proffered by his father and
mother, and thereupon bought from a neighbor a house situ-
ated near the land, and moved the same to said land. The
house was bought by Richard in the presence of his father,
and the latter rendered him some assistance in moving it to the
land in controversy. Richard thereafter put some improve-
ments on the house, enlarging it by building an addition
thereto, erected a barn on the premises, sunk a well and
planted trees and shrubbery thereon, and otherwise and gen-

18 Cal. App.—44

erally so improved the place as to bring its value up to a sum exceeding $1,500, or to a sum in excess of $1,400 more than the testimony shows the land to have been valued at when the same was given to him. The witness said that he had had many conversations with his mother concerning the land, both before and after he put the house up. On one occasion he remarked to her that, having had some angry discussion with his father, "I am kind of afraid there will be some trouble about that lot some day," to which she replied: "Don't you fear; that lot is going to be yours as long as you live, and there is no law that is going to take it away from you." The witness, in this connection, declared that "she told me that she had given me the lot." Richard further testified that, after his mother's death, his father came to his home and lived with him; that on one occasion, after his mother's death, his father said to him that the lot was his (Richard's), and that he could "do with it as you have a mind to."

One Antone Davis, an old resident of Halfmoon Bay, in the vicinity of which place the land concerned here is situated, testified that both the father and mother of Richard declared to him that they had given the disputed land to Richard.

There was produced in behalf of Richard other testimony, a detailed review of which in this opinion is unnecessary, tending to sustain his claim that the property had been transferred to him by gift by his parents.

The only oral testimony offered by the plaintiff, in contradiction to Richard's testimony, was that given by his father, Joseph S. Thomas, who testified that, "about a month or two" after the death of his wife, he had a conversation with Richard in which he proposed that the latter buy the land described in the complaint and that Richard replied that he would buy it. This testimony was rebutted by Richard, who testified that no such conversation as that to which his father testified ever occurred.

As before stated, in our opinion the evidence, of which the foregoing statement contains a fair conspectus, sufficiently sustains the decision of the trial court.

The testimony clearly enough shows that the parents joined in the gift of the property to Richard in consideration of

services theretofore rendered by the donee for them and of an agreement on the latter's part that.he would build a house on the premises and otherwise improve them, and that Richard performed his part of the convention.  The only contradiction to Richard's testimony as to the gift is found in the testimony of his father, who, as we have shown, referred to a conversation occurring after the death of the latter's wife, with Richard, wherein he (Joseph) proposed that Richard buy the property and that the latter agreed to that proposition.  It will be noted in this connection that Joseph does not directly say that he and his wife did not give the land to Richard under the circumstances as detailed by the latter.  His testimony, at the most, may be regarded as merely furnishing a rather remote foundation for the inference that the property had not previously been transferred to Richard.  But, in any event, the evidentiary significance of this testimony was a matter for the trial court to determine, and its conclusion thereon, as evidenced by its findings, is binding upon us.

It is not disputed that Richard took possession of the property at the time it was given to him, made extensive and, compared to its value, expensive improvements thereon, and continuously maintained possession and had possession at the time of the pretended conveyance of the land to plaintiff, and, indeed, up to the time of the trial of this action.  It further stands as an undisputed fact that the improvements added to the property by Richard and which increased the value thereof from $75 to a sum exceeding $1,500, were made at his own expense or by the expenditure of his own labor and money. The father of Richard was to some extent supported and maintained by Richard at his home after his mother's death without compensation, other than that received through the gift of this land.  All these circumstances seem to tend, and no doubt the trial court so viewed them, to corroborate the claim of Richard that the property was jointly given to him by his parents.  But, as to the contention that the gift was not jointly made by the parents, we need only to refer to the testimony of Richard wherein he declared that both his father and mother agreed and proposed that the property should be given him and that, when he accepted the gift and took possession, both acquiesced in it, and always thereafter and until the death of his mother and the execution and delivery of the

deed to plaintiff by his father treated Richard as the owner of the property. Even after the death of Richard's mother, his father assured him that the property belonged to him (Richard), and thus recognized as valid the joint transfer thereof to Richard by himself and his wife.

But we perceive no necessity for further pursuing a discussion of the facts. It is sufficient to repeat that, upon the whole record, we are persuaded that the trial court was justified in reaching the conclusion, as crystallized in its judgment, that the gift was by the joint act of Joseph S. Thomas and his wife.

Moreover, it may be observed that all the equities appear to be with Richard Thomas and against the plaintiff. The consideration for the conveyance to plaintiff and all the circumstances clearly indicate that the plaintiff was not a purchaser in good faith.

There is no evidence in the record rebutting the presumption that the amount recited in the deed as the consideration for the conveyance to plaintiff, viz., the sum of $10, was the sum actually paid by plaintiff to Joseph S. Thomas for the land and its improvements (13 Cyc. 613; Devlin on Deeds, sec. 817), and it must, therefore, be assumed that that sum was the amount so paid for the land. Furthermore, Richard Thomas having been in open, notorious and exclusive possession of the land at the time of the alleged purchase of the same from and conveyance thereof by Joseph S. Thomas, the plaintiff was, therefore, put upon inquiry as to the legal or equitable rights, or both, of Richard Thomas, and is presumed to have purchased the land and taken a conveyance thereof from the vendor with full notice of all the legal and equitable rights in the premises of said Richard and in subordination to those rights. (*Pell* v. *McElroy*, 36 Cal. 271; *Scheerer* v. *Cuddy*, 85 Cal. 273, [24 Pac. 713]; *Security etc. Co.* v. *Willamette etc. Co.*, 99 Cal. 636, [34 Pac. 324]; *Stonsifer* v. *Kilbourn*, 122 Cal. 659, [55 Pac. 587]; *Robinson* v. *Muir*, 151 Cal. 123, [90 Pac. 521]; *Niles* v. *Cooper*, 98 Miss. 39, [13 L. R. A., N. S., 49, 107 N. W. 744]; *Lowther Co.* v. *Miller*, 53 W. Va. 501, [97 Am. St. Rep. 1039, 44 S. E. 433].)

As the court says in the Pell case, *supra*, "he cannot be regarded as a purchaser in good faith who negligently and willfully closes his eyes to visible pertinent facts, indicating

adverse interest in or encumbrances upon the estate he seeks to acquire, and indulges in possibilities or probabilities, and acts upon doubtful presumptions, when, by the exercise of prudent, reasonable diligence, he could fully inform himself of the real facts of the case.'' The plaintiff here, having purchased land in the possession of a third person, had no right to rest upon the record title alone in making the purchase, but was required to look beyond the record title for the purpose of ascertaining what rights and equities, if any, Richard Thomas, the party in possession at the time of the alleged purchase, had in the premises. (*Security etc. Co.* v. *Willamette etc. Co.*, 99 Cal. 636, [34 Pac. 324].) A little inquiry or the exercise of common or ordinary diligence would have readily developed to him, it seems to us, that Richard Thomas either had a valid title to the land, acquired by gift from his parents, or that he was made to believe and, therefore, honestly believed, that he owned such a title, and that under such belief he made expensive improvements, which, under the circumstances, vested in him an equity in the premises of which he could not wantonly be divested, or of which he could not be deprived without reimbursement or just compensation. Even, therefore, if it be conceded that Richard Thomas did not acquire a title to the land by reason of the failure of one of the spouses to join in the gift, inquiry by the plaintiff would have disclosed circumstances, as certainly such circumstances are shown here, entitling Richard to reimbursement for the improvements he put upon the land as a condition precedent to the right of plaintiff to the equitable relief demanded by his complaint. In other words, having appealed to equity for relief, he could not expect equitable aid without doing or offering to do that equity to which inquiry must have shown him that Richard was entitled.

From every viewpoint, the judgment should be affirmed, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 15, 1912, and the following opinion then rendered thereon:

HART, J.—The petition points out that, in the original opinion herein, we did not directly pass upon the contention, urged by counsel for the plaintiff in their brief, "that a homestead cannot be alienated in any manner whatsoever, except as prescribed by the code," and that, inasmuch as the code provides that "the homestead of a married person cannot be conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both husband and wife" (Civ. Code, sec. 1242), a parol gift of real property upon which the homestead of a married person subsists at the time of such gift is absolutely void and cannot, therefore, be enforced, notwithstanding that such gift may be the result of the joint act of both spouses for whose benefit such homestead has been declared.

While it is true that we ·did not discuss this precise question in the original opinion, the necessary effect of the decision is that a parol gift of real property by the husband and wife, for whose benefit a homestead had been declared thereon and is in existence at the time of such gift, may and will be enforced by a court of equity where the circumstances of such gift are similar to those under which a like gift of real property not impressed with a homestead will be so enforced. In our original investigation of the questions presented by this record, we conceived the settled rule to be as above stated, and, therefore, regarded a discussion of the point pressed in the petition rather as supererogatory than necessary.

All that counsel say respecting the legal requisites which our code prescribes shall be observed in order to legally abandon or convey or encumber the homestead of a married person must be conceded to be sound. And, as counsel declare, our supreme court, in the cases of *Matthews* v. *Davis,* 102 Cal. 202, [36 Pac. 358] , *Hart* v. *Church,* 126 Cal. 471, [77 Am. St. Rep. 195, 58 Pac. 910, 59 Pac. 296] , and *Friermuth* v. *Steigleman,* 130 Cal. 392, [80 Am. St. Rep. 138, 62 Pac. 615], has very clearly shown that the homestead of a married person cannot be abandoned, conveyed or encumbered, except by a substantially strict compliance with the methods prescribed by the statute for the achievement of any of those ends. The absolute soundness of the conclusions arrived at in those cases cannot for a moment be questioned.

But, as we view the proposition now submitted in the case at bar, the question discussed and decided in the cited cases does not arise here. The question here is not whether the parents of Richard Thomas undertook to convey a portion of their homestead without the observance of the *legal* requisites essential to the conveyance of such right or title to the property involved, but whether the circumstances attending their joint gift of said property to their son are such as to justify a court of equity in denying to them the right to repudiate such gift for any legal as distinguished from equitable reason that might, in an action at law, operate to invalidate such an agreement.

The doctrine that verbal contracts for the sale of land, if part performed by the party seeking the remedy, may be specifically enforced, is an elementary principle in equity jurisprudence and of universal application throughout the American states. Indeed, it had its origin in English chancery law, and merely means, where invoked, the application of the doctrine of equitable estoppel to those unconscientious transactions which, though sustainable in law, courts of equity frown upon and will not uphold. In other words, the enforcement by courts of equity of verbal contracts for the sale or conveyance of land does not proceed upon the theory that the statutes requiring contracts for that purpose to be in writing are invalid or should not be strictly adhered to, but solely upon the theory that a party entering into a verbal agreement to convey his land to another should not be permitted in equity to withdraw therefrom or refuse to execute such agreement and to shield such act, if the same be unconscientious and will operate as a fraud upon the rights of the other party, behind the statute. And we have been shown no reason, and we frankly confess that we can conceive of none, why an oral agreement to sell land upon which there subsists at the time of the making of such agreement a homestead of married persons, such agreement having been jointly made by the husband and wife for whose benefit such homestead has been declared, should not as well, when the exigencies of the situation justify it, be subject to the government of equitable principles, appropriate in equity to such agreements, as are such agreements involving real property upon which there is no homestead.

The legislature obviously conceived and evinced in the statute concerning the transfer generally of real property no less solemnity in the act of conveying such property upon which there is no homestead than in the act of transferring the homestead of a married person, for section 1091 of the Civil Code provides that "an estate in real property other than an estate at will or for a term not exceeding one year, can be transferred *only* by operation of law, *or by an instrument in writing, subscribed by the party disposing of the same,* or by his agent thereunto authorized by writing." No less or no more is required for the transfer of a homestead of a married person, and if, as is admitted to be true, an oral agreement for the sale of real property not embarrassed by a homestead may, under certain conditions, be enforced in equity, upon what principle or rational course of reasoning may it be held that such an agreement involving property upon which there is a homestead of a married person may not, under similar conditions, likewise be enforced? None can, in our opinion, be suggested.

As stated, equity does not interpose relief as to such agreements upon the theory that the statutory requirement that they shall be committed to writing in order to be enforceable in law is invalid or should not be complied with. On the contrary, equity regards such statutory requirements as of binding force in law; but, acting *in personam* and operating directly upon the consciences of the parties to such agreements, equity merely says that a party to such an agreement will be estopped from standing on his *legal* rights in support of his refusal to carry out his part of the agreement, where the circumstances, as here, disclose that such conduct on his part would be unconscientious and work a fraud upon the rights of the other party.

As shown in the original opinion, the court found from sufficient evidence that the parents of Richard Thomas agreed to give him the land in controversy upon the condition that he would establish a home upon it; that he accepted the gift upon that condition, in execution of which he purchased a house, removed it to the land, erected a barn on said land, planted it to trees, filled it in with dirt, and otherwise improved and equipped it for the purposes of a home; that he took up his residence on the place and there resided, claiming it as his

own, for a considerable period prior to the death of his mother and for a greater period before his father executed the conveyance of the land to the plaintiff; that his claim of ownership of the land after he had improved it as described at great expense was acquiesced in by his parents up to the time of the death of his mother; that the improvements he put upon the lands so enhanced the value of the property that, whereas it was of no greater value than $75 when it was given to him, at the time of the attempted conveyance of it by his father to the plaintiff in consideration of the sum of $10, it was valued at $1,500. To say that upon these facts a court of equity is too impotent to afford relief or that the findings do not show a case for equitable interference and the application of the doctrine of equitable estoppel against the claim that the gift is nonenforceable because it involved an attempt, futile in law, to transfer the homestead of the donors, would, in our judgment, be a reproach upon that branch of our system of jurisprudence justly distinguished for the efficacy of its remedial power in those cases which, like this, would, but for such interference, stand as exemplars of the rankest injustice sanctioned only by the unyielding obstinacy of legal rules.

We are unable to agree with counsel for the appellant upon the proposition herein discussed, and a rehearing is, therefore, denied.

Burnett, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 14, 1912.