[Civ. No. 2570. Third Appellate District.—May 21, 1923.]

## TITLE GUARANTEE AND TRUST COMPANY (a Corporation), Executor, etc., Appellant, v. HAMMOND LUMBER COMPANY (a Corporation), Respondent.

[1] Corporations—Execution of Note and Deed of Trust — Agreement to Pay—Want of Authority—Evidence—Findings—Judgment.—In this action to recover from defendant corporation a sum of money equal to an alleged deficiency following from the difference between the sum for which a certain promissory note was alleged to have been made and given by defendant to plaintiff's testator and the sum for which certain real property was sold by the trustee under a deed of trust, given to secure said note, for the purpose of satisfying the obligation, the findings of the trial court to the effect that defendant did not own the real property covered by the deed of trust or have any interest therein, that it did not promise or agree to pay the indebtedness or the note, and that the note (which had been executed by one of its employees) was not executed or authorized by it, were supported by the evidence, and those findings supported the judgment for defendant.

[2] Id.—Acts of Officers and Employees—Authority—Estoppel.— A corporation is not bound by any act or acts of its officers or employees unless they are by the corporation vested with general authority to transact any and all of the business falling within the scope of its corporate purposes, or vested with special authority, through formal action of its board of directors, to do some particular act within the limits of its charter powers, or unless the corporation has held such officers or employees out to the public as possessing authority to act for it according to the general usage, practice, and course of its business.

[3] Agency—Mortgage—Written Authority.—The authority of an agent to make any mortgage for his principal (and a trust deed given as a pledge for the payment of money is in legal effect a mortgage) must be in writing.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

2. Authority of officer to represent corporation as inferred from manner in which he has been permitted to act, note, **Ann. Cas. 1913D,** 646.

Liability of corporation on negotiable paper executed by officer or agent, notes, 2 **Ann. Cas.** 520; 18 **Ann. Cas.** 729; 21 **L. R. A.** (**N. S.**) 1046.

The facts are stated in the opinion of the court.

John F. Keogh, C. C. Mishler and Frank H. Snyder for Appellant.

R. L. Horton for Respondent.

HART, J.—Since the appeal herein was taken, the original plaintiff and appellant, John S. Maltman, passed out of this life, testate, and the above-named corporation, having previously been regularly appointed executor of the last will of the deceased, was thereafter duly substituted as party plaintiff and appellant in the place and stead of said John S. Maltman.

The action is to recover from the defendant a sum of money equal to an alleged deficiency following from the difference between the sum for which a certain promissory note is alleged to have been made and given by defendant to said Maltman and the sum for which certain real property in Los Angeles County was sold by the trustee under a deed of trust, given to secure said note, for the purpose of satisfying the obligation.

Judgment passed to the defendant, and an appeal from said judgment is brought here upon a bill of exceptions.

The principal question presented for decision here is whether the findings derive sufficient evidentiary support.

The facts, as they are alleged in the complaint, may thus be stated: The real property to which the trust deed to secure the payment of the promissory note referred to was made and given consists of lots 22, 23, and 24, in block 8, of Park Tract, in the county of Los Angeles. On the twenty-sixth day of March, 1913, Walter E. Martin and his wife were the owners of these lots, and on the date first mentioned they executed to John S. Maltman, the original appellant herein, a mortgage covering said property to secure the payment of their promissory note to said Maltman for the sum of $9,000, to mature at the expiration of two years from the date of said note. Said note called for interest at the rate of seven per cent per annum, payable quarterly, in default of which payment the interest thus accrued to be added to the principal and draw like interest. It was also provided in said note that in the

event that default be made in the payment of any install-
ment of interest when due, then the whole sum of principal
and interest "shall become immediately due, and payable
at the option of the holder of this note." On the twentieth
day of November, 1914, Maltman brought suit in the supe-
rior court of Los Angeles County to foreclose said mortgage
against said real property. In addition to the lien of the
mortgage, there also subsisted against said property, at the
time of the conveyance hereinafter to be referred to, an
assessment lien in the sum of $2,686.56 and interest thereon,
said lien arising by reason of the improvement of the street
upon which the property abutted. On June 1, 1915, Malt-
man dismissed said foreclosure suit and satisfied the liens
subsisting against the same in consideration of a promise
by the defendant, through one of its employees named
O'Malley, that it (defendant) would give to Maltman its
promissory note in a sum equal in amount to the mortgage
indebtedness and the assessment lien and execute a trust
deed as security for the payment of said note; that, agree-
ably to this arrangement, the property was conveyed to one
W. H. Elliott, who in turn gave plaintiff his promissory
note for the sum of $12,641.79, and at the same time exe-
cuted and delivered to the Title Guaranty and Trust Com-
pany, a corporation, as trustee, a trust deed to secure the
payment of said note; that said · Elliott was an employee
of the defendant, and was in said transaction authorized
to act for and did act for the defendant. On March 19,
1917, the defendant caused said Elliott, his wife joining,
to convey the said property to H. W. McLeod, who was, at
the time of said conveyance, and for some time previously
had been, the manager of defendant's business affairs in
the city of Los Angeles; that said McLeod took said convey-
ance for and in behalf of the defendant, and that he was
then duly authorized by the defendant so to do.

Prior to February 7, 1919, said note became due and
payable, and on said date, while the obligation still re-
mained unsatisfied, the following proposal in writing, pur-
porting to be signed by the defendant through H. W.
McLeod, its manager, was addressed to and in due time
received by Maltman:

"February 7, 1919.

"Mr. John S. Maltman,

"Los Angeles, California.

"Dear Sir:

"We hold title to lots 22, 23 and 24 in block 8 of the Park Tract on Sunset boulevard, on which you hold a trust deed in the amount of $12,641.79, together with accrued interest.

"If you will allow a new one-year trust deed to be issued to be signed by C. L. Van Deventer in the amount of $11,000 at 7%, we will agree to pay down to that amount together with all accrued interest and taxes. We are to be the owners of the equity in this property.

"Yours very truly,

"HAMMOND LUMBER COMPANY,

"By H. W. McLEOD,

"Manager."

At the end of the above writing and upon the same sheet of paper were the following words and figures:

"Accepted:

"JOHN S. MALTMAN,

"2/8/19.

"Recd. of Hammond Lumber Company two thousand two hundred seven 98/100 dollars reducing the above mentioned indebtedness to eleven thousand dollars as of Jan. 7th, 1919.

"JOHN S. MALTMAN."

In pursuance of the above alleged proposal by defendant, through said McLeod, and acceptance thereof by Maltman, defendant caused said McLeod to convey said real property to one C. L. Van Deventer, alleged to be an employee of defendant, he (Van Deventer) having taken said conveyance for and in behalf of defendant and authorized by the latter so to do; that "defendant rendered the entire consideration for said conveyance, and that none of the consideration therefor was rendered by the said Van Deventer." Subsequently, and on January 24, 1919, defendant, in the name of C. L. Van Deventer, executed to Maltman a promissory note for the sum of $11,000, payable one year after date, and, as security for the payment of the same, Van Deventer executed a trust deed to the Title Guarantee and Trust Company, as trustee, to the said real

property. All these last-mentioned transactions were, it is alleged, carried out for and in behalf of defendant and in pursuance of the proposal and acceptance thereof above quoted herein.

On August 2, 1919, the second quarterly installment of interest on the Van Deventer note having previously fallen due, Maltman, on July 24, 1919, at which time said installment of interest remained unpaid, as were also the taxes on said property for the years 1918–19, exercised his election, as provided in the note for such defaults, to declare the whole sum of the principal and accrued interest to be due and payable, and caused a notice of said default by the defendant and election by him to be recorded, on August 5, 1919, in the office of the county recorder of Los Angeles County. On the same day Maltman duly requested the trustee under the said deed of trust to proceed with the sale of said property in accordance with the terms of said deed and as in such cases required by law.

On December 6, 1919, the said trustee duly and regularly exposed said property for sale at public auction, and Maltman submitted at said sale a bid therefor in the sum of $5,000. Said bid being the highest offer made for said property at said sale, the same was "struck off" and sold to Maltman for said sum. Deducting the sum of $320.80 which was expended as costs or expenses for conducting the sale, the balance remaining and credited upon the note was the sum of $4,679.20. The demand is for the sum of $6,320.80, which included said costs and also the taxes for 1918–19 in the sum of $68.90.

As stated at the beginning hereof, the above statement is gleaned from the complaint.

The defendant, answering the complaint, specifically denies every material allegation thereof except the allegations contained in paragraphs 13 and 14 thereof, as to which it declares that it has no information or belief sufficient to answer the same, "and basing its denial upon that ground, denies each and every allegation in said paragraphs contained." (These paragraphs of the complaint contain allegations as to the falling due of an installment of interest on the principal sum, the failure of the defendant to pay the same, and the election of the plaintiff to exercise his option to declare the whole sum of principal and interest

of the note then due and payable and also the allegations as to the sale by the trustee under the trust deed given to secure said note of said real property and the result of said sale, etc.)

The answer also sets up a special defense based upon the letter purporting to have been addressed to the plaintiff by the defendant, through "H. W. McLeod, Manager," under date of February 7, 1919, and above referred to. As to this letter and the acceptance by Maltman annexed thereto, the answer alleges "that at the time said letter was so signed it was stated to the said plaintiff that the said defendant declined and refused to sign any promissory note or trust deed or agreement of any kind or character that would render it liable for the payment of any sum or amount to the said plaintiff whatsoever, and said defendant has not at any time agreed to pay to the said plaintiff any sum mentioned in any promissory note or trust deed, or any sum whatsoever."

The findings are in accord with the denials of the answer and are, in the main, in the negative form. In substance they are as follows: That the defendant did not, on August 15, 1915, or at any time, own the real property involved herein or take title thereto in the name of W. H. Elliott or any other person; that said Elliott was not at the time mentioned, or at any time, acting for or on behalf of the defendant, nor was he authorized by the defendant so to do; that, while not taking title to the property through said Elliott on the date mentioned, it, nevertheless, rendered the consideration for the conveyance to Elliott; that the plaintiff did not dismiss the foreclosure suit in consideration of a promise by the defendant that it would execute in favor of plaintiff its promissory note equal to the amount of the mortgage indebtedness and a street assessment lien then existing against the property and also execute a deed of trust to said or any real property to secure the payment of said note; that, while it is true that the defendant did, on the 7th of June, 1915, dismiss said foreclosure suit and paid and satisfied said street assessment and said mortgage upon said property, yet H. F. O'Malley, although an employee of the defendant, did not promise, nor was he duly authorized to promise, for and on behalf of the defendant, that the defendant would execute a note and trust deed, on

consideration of the dismissal of said foreclosure suit, etc., nor was any other person or employee of the defendant authorized to make any such promise in consideration of the dismissal of said suit and the payment of said mortgage and assessment; that on March 19, 1917, the defendant did cause said Elliott and his wife to convey said real property to H. W. McLeod, and said McLeod did take said conveyance for and on behalf of the defendant, and he was then and there, and at said time, duly authorized and nominated by defendant so to do; that the defendant did not, on February 7, 1919, at which time said note became due and was unpaid, propose in writing to the plaintiff that if the latter would extend the time of payment of $11,000 of the indebtedness, so due and unpaid, it would reduce its indebtedness to said amount, nor that it would execute its promissory note in favor of plaintiff in the sum of $11,000, or any sum, and would secure the same by a trust deed upon said property, but that upon said date said defendant made its certain proposal in writing to said plaintiff, ''which said writing is set forth in defendant's special defense in its answer to plaintiff's complaint, and which said written proposal was accepted by said plaintiff on the eighth day of February, 1919''; that on February 10, 1919, the defendant caused said McLeod to convey said real property to C. L. Van Deventer; that the latter was not an employee of defendant and did not take said conveyance on behalf of defendant, ''but he was then and there agreed upon between the plaintiff and the defendant to act as a dummy in said transaction, and did act as a dummy, with the express purpose of relieving defendant from any obligation on said note or trust deed upon a consideration paid for that purpose by the defendant; that the promissory note executed by the said Van Deventer in favor of plaintiff in the sum of $11,000 and the trust deed to said real property executed to the Title Guarantee and Trust Company to secure the payment of said note were not made and executed for or on behalf of the defendant or by its authority, nor was there any promise made by the defendant that it would pay to the plaintiff the sum of $11,000 as evidenced by said note, nor were said note and mortgage executed by the said Van Deventer upon any promise made by the defendant either on January 24, 1919, or at any other time that it

would pay said note. The fact of the exercise by the plaintiff of his option to declare the whole of the principal sum of said note due and payable upon default in the payment of the quarterly installment of interest and that the plaintiff's testate caused a notice of the said default to be recorded on August 5, 1919, in the office of the county recorder of Los Angeles County, and the further fact that the property was, upon request by plaintiff, exposed for sale at public auction, that the same was bid in by the plaintiff for the sum of $5,000 and that the costs and expenses for conducting said sale amounted to the sum of $320.80, which sum was paid by the plaintiff, leaving a balance of $4,679.20 to be credited upon said promissory note, were found to be true.

The whole transaction involved herein, so far as is concerned the part taken therein by the defendant and its employees, if, indeed, we may assume that the defendant, as a matter of fact, did itself take a part or hand therein, seems to be shrouded in more or less of a mystery. If, as the court found to be true, the defendant did not at any time own the property in question or own any interest of any kind or nature therein, then it is strange that the defendant, as the court also found was so, should have rendered the consideration for the transfer of the property by the plaintiff to Elliott, one of its employees. If the defendant at no time owned any interest in the property, it is also strikingly singular that it should have required Elliott to transfer the property to McLeod, its manager. [1] These observations, however, are not decisive of this case, nor are the circumstances which inspire their utterance of any consequence in the decision of the ultimate question presented by this appeal, to wit, whether there is evidence sufficient to support the findings essential to the upholding of the judgment; and we may as well here declare our opinion to be that such findings are sufficiently fortified, evidentially, and that they in turn support the judgment.

The testimony of Maltman is in substantial accord with and supports the averments of the complaint, except as to any facts contained in that pleading which may be regarded or construed as sufficiently setting up an estoppel against the right of the defendant to interpose the plea that the note

in suit was not its obligation.   And, as to this proposition, it is to be foretold that, conceding that the circumstances under which the complaint declares that the foreclosure suit was dismissed are sufficient to raise such estoppel, even Maltman's own testimony (and his is all the oral testimony presented in support of the complaint) signally fails to support the averments of his pleading in that respect.

Maltman testified that at some time in the year 1915 O'Malley, one of the defendant's employees, called to see him at his office in Los Angeles; that O'Malley said to him that he was an employee of the defendant, that he was negotiating at that time to obtain the title to certain property on which he (Maltman) had a mortgage (being the lots described in the complaint), and that negotiations were pending for securing title to said property by the defendant; that "he understood that I had a mortgage on the property and a suit pending to foreclose the mortgage.   He asked whether I would be willing to dismiss the action and have the Hammond Lumber Company assume the debt."   Maltman stated that O'Malley a short time thereafter again called on him and urged him to accept the defendant's proposition that it assume the mortgage debt.   O'Malley's proposition to Maltman, so the latter stated, was that the defendant would give him a trust deed and note for the entire amount of the principal and interest and also an assessment of over $2,600 that Maltman had paid for street improvement and back taxes and attorneys' fees in his foreclosure suit.   O'Malley, proceeded Maltman, said that the defendant would require the dismissal of the foreclosure suit "and that by taking the Hammond Lumber Company I would be getting a responsible party instead of an irresponsible one.   I said, in substance, that I would accept the proposition.   The matter was placed in escrow; during the time it was in escrow, I learned that one Elliott was to take the title for the Hammond Lumber Company; I called down to the Hammond Lumber Company yard on Alameda Street, where I met Mr. Elliott and some members of the company, among who were Mr. McLeod, the manager, and Mr. O'Malley; they told me, at that time, that Mr. Elliott was an employee of the company; that was in August, 1915, I think, prior to the closing of the escrow.   Mr. O'Malley, Mr. McLeod, and

Mr. Elliott were the parties present. It was stated to me there that Mr. Elliott was taking the title of this property for the Hammond Lumber Company as a convenience for the company. I said I wanted to know why Elliott was taking the title and not the Lumber Company. Afterwards the first note and trust deed [the Elliott note and trust deed] was delivered to me.''

The above is all the testimony presented by the plaintiff as to the circumstances leading to the dismissal of the foreclosure suit, the conveyance of the property to Elliott and the latter's execution of a promissory note in favor of the plaintiff for the indebtedness subsisting against the property when the foreclosure suit was dismissed and the execution of a trust deed to secure said note; and it is thus to be observed that it was not shown that the taking over of the property by Elliott and the execution of the note and trust deed by him were authorized by the defendant. There is no evidence in this record disclosing the extent of the authority of the manager of the corporation, nor is there any evidence showing that the board of directors of the defendant corporation formally or otherwise conferred authority upon its manager or its employees, named in connection with the transaction here, to do any act or acts looking to the sale or transfer or acquisition of the property in question, or that its manager or any of its other employees herein named was held out by it as possessing authority to transact for and on its behalf the business of buying real estate. Indeed, conceding that the defendant was a party to the several transactions relating to the real property in question, it is not made to appear that said transactions were within the sphere of its corporate authority or purposes. There is no writing of any character purporting to involve an authorization by the defendant of the Elliott transaction, or, for that matter, of any of the transactions carried out in connection with the real property in question.

[2]   It is well settled that a corporation is not bound by any act or acts of its officers or employees unless they are by the corporation vested with general authority to transact any and all of the business falling within the scope of its corporate purposes, or vested with special authority, through formal action of its board of directors, to do some particular act within the limits of its charter powers, or

unless the corporation has held such officers or employees out to the public as possessing authority to act for it according to the general usage, practice, and course of its business. (*Blood* v. *Marcuse*, 38 Cal. 594 [99 Am. Dec. 435] ; *California Wine Makers' Corp.* v. *Sciaroni*, 139 Cal. 277, 280 [72 Pac. 990]. See, also, on the general subject of the extent of the authority of the manager or the president of a corporation to transact its usual or ordinary business without formal specific action of the board of directors in that regard, *Stevens* v. *Selma Fruit Co.*, 18 Cal. App. 250, 251 [123 Pac. 212].) **[3]** More important still, however, as applicable to this case, is the rule that the authority of an agent to make any mortgage for his principal (and a trust deed given as a pledge for the payment of money is in legal effect a mortgage) must be in writing. (Civ. Code, secs. 2309 and 2933; *Blood* v. *Serena etc. Co.*, 113 Cal. 221, 229 [41 Pac. 1017, 45 Pac. 252] ; *Curtin* v. *Salmon River etc. Co.*, 141 Cal. 309, 311 [99 Am. St. Rep. 75, 74 Pac. 851].)

It may here be added that there is no evidence that the defendant at any time ratified or in any manner sanctioned whatever acts were done by its manager or the other employees with reference to said property.

Nor is there any element of estoppel disclosed here, even if it were necessary to concede that the facts stated in the complaint are sufficient to present that issue. The only ground for an estoppel as against the defendant which could have arisen would have been in the fact of its alleged promise to take the property and give its promissory note to the plaintiff for a sum equal to the amount of the aggregate indebtedness subsisting against the property and the giving of the trust deed to secure the same upon the dismissal by plaintiff of the foreclosure suit. But the answer to any claim of an estoppel is to be found in what has been said above, to wit: That there was no competent evidence showing that the defendant itself ever made such promise or had any transaction with plaintiff in regard to the property or that it authorized its manager or any of its employees to enter into or carry out for it any negotiation with reference to said property.

The finding that no part of the consideration for the transfer or conveyance of the property to Elliott "was ren-

dered by said Elliott, but by the defendant," is, so far as we are able to judge from this record, unintelligible. The said finding is a part of the finding that the defendant never at any time became the owner of the lots in question or took title thereto in the name of W. H. Elliott, or any other person, and that neither Elliott nor any other person at any time acted in the matter of the transfer of the property to any person for or on behalf of the defendant. But whether a consideration passed to plaintiff for the conveyance of the lots to Elliott, other than the consideration for which the plaintiff dismissed the foreclosure suit—that is, the alleged proposition of the defendant to purchase the property and to assume the indebtedness for which it had been pledged to the plaintiff by the Martins—is of no material importance in the decision of this case, since the plaintiff testified (and there is no evidence contrary to his testimony as to this matter) that he did not hear of Elliott's connection with the transaction until approximately a month after the foreclosure suit had been dismissed and "the matter had been put in escrow," pending the completion by the defendant of its alleged part of the agreement with regard to the property. Thus it would appear that the transfer of the property to Elliott was not, so far as the plaintiff was advised, a part of the transaction resulting in the dismissal by him of the foreclosure suit.

We now come to the matter of the transfer of the land to Van Deventer, a consideration which is itself really decisive of this case. Raymond Johnson testified that he was an employee of the defendant in the months of January and February, 1919; that Maltman came to his office in the month of January, 1919, and opened up the discussion of the matter of the property in question and asked the witness if the defendant intended to pay the note executed by Van Deventer, to which the witness replied in the negative. Maltman said that he would not want the full amount but would like to have $10,000 of the indebtedness paid and said that the defendant "was responsible for the indebtedness and I told him if we were it would have been paid before now." A few days thereafter, so Johnson proceeded, Maltman again called on him and the witness stated to him that he (witness) had talked with those in authority over the defendant and that they said that they would not be re-

sponsible for the Van Deventer note. Thereupon Maltman asked the witness if he would request the defendant to sign the following memorandum which Maltman had prepared: "Referring to your note and trust deed bearing date June 7, 1915, covering our lots 22, 23 and 24, block 8, Park Tract, we have decided to issue a new note and trust deed, reducing the principal sum from 126 (?) to $11,000 on same term and note of interest, as heretofore. Our Mr. C. L. Van Deventer holds the title to said property in trust for the Hammond Lumber Company as a matter of convenience and will sign all the necessary papers." This memorandum, obviously, was to secure binding authority from the defendant for the transaction between the plaintiff and Van Deventer. Johnson testified that he with Maltman went to the office of the Title Guarantee and Trust Company of Los Angeles and Maltman asked a Mr. Samuel of that company if the memorandum would bind the defendant, at the same time showing him the writing; that Samuel replied that it would not, to which Maltman answered: "Well, this won't do, then." The witness interposed and said: "Well, all right, Maltman, we have told you all along the Hammond Lumber Company would not sign the paper and would not obligate themselves." Maltman and Johnson then left the Trust Company office and walked a considerable distance therefrom when the conversation concerning the proposed transfer of the property to Van Deventer was renewed and Johnson said to Maltman that he would be better off by accepting $2,000 "and taking this dummy [Van Deventer being so referred to] than he would be to go ahead and foreclose on the other one, where we were not responsible; that we would not change our condition any from that and he would have $2,000 on that debt paid anyway. I said to him that Elliott was not the Hammond Lumber Company and he was certainly man enough in the business world to know that he wasn't." Maltman thereupon stated: "I will take this proposition," and the two then returned to the Trust Company office where Maltman stated to Samuel that he had accepted the proposition and asked Samuel to write a receipt for the $2,000, which Samuel did. It was stipulated that Van Deventer was "purely a dummy in relation to the conveyances, trust deed, and note, signed by him as disclosed by the evidence, and that he was paid therefor by

the Hammond Lumber Company the sum of $25.'' The whole trend of Johnson's testimony was that the transfer to the ''dummy'' (Van Deventer) was for the purpose of releasing the defendant from any liability whatsoever upon the obligation.

The testimony of Johnson sufficiently supports the finding that the defendant was not liable for the indebtedness evidenced by the purported note of Van Deventer, or, in other words, was not liable upon the note in suit; that even if the defendant ever considered itself as liable on the Elliott or McLeod note, the Van Deventer transaction was negotiated and consummated for the purpose of relieving the defendant from any further liability upon the obligation and that the payment of the $2,000 to plaintiff, for which he executed a written receipt at the time of the execution of the Van Deventer note and trust deed, was the consideration for the release of the defendant from any further liability in connection with the transaction. The fact is that the uncontroverted testimony of Johnson that Maltman insisted that the defendant should sign the memorandum referred to strongly tends to show that Maltman himself did not think or assume that the note from McLeod to him or even the note from Elliott to him constituted a binding obligation against the defendant.

The case of *Karns* v. *Olney,* 80 Cal. 90 [13 Am. St. Rep. 101, 22 Pac. 57], cited by appellant, is, in its facts, altogether different from the case at bar, and, therefore, bears no relevancy to the present consideration. There an agent, in the presence of his principals, orally agreed to sell certain lots to the appellant for a certain price. The latter, in obedience to the agreement, and in the presence of the principals, made at the time the required cash payment. Appellant took immediate possession of the lots and proceeded to and did make substantial improvements thereon with the knowledge of the vendors or the principals in the transaction. The action was for the specific performance of said contract. The trial court decided the case against the plaintiff (appellant) and the supreme court, on appeal, reversed the judgment and ordered the court below to enter judgment upon its findings in favor of the plaintiff. The decision in said case followed from a pertinent application of the doctrine of equitable estoppel. (See *Kinsell* v. *Thomas,*

18 Cal. App. 683 [124 Pac. 220].)   In the present case, as
we have shown, there was, so far as the record here dis-
closes, no agreement by the defendant to purchase the land,
nor was it shown that any of the transactions relating to
the said land were carried on in the presence of the defend-
ant or anyone properly authorized to act for it in the
premises, or that there was a memorandum in writing evi-
dencing a sale or transfer of the property to the defendant
through anyone authorized to act for it, or any money paid
by defendant or any person to plaintiff as an earnest of
any bargain relating to said land or for any purpose, except
the payment of the $2,000 on the execution of the Van
Deventer transaction.

The judgment is affirmed.

Burnett, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court,
after judgment in the district court of appeal, was denied
by the supreme court on July 19, 1923.