[No. 12864. In Bank.— August 2, 1889.]

## SCOTT KARNS, APPELLANT, *v.* WARREN OLNEY, RESPONDENT.

PRINCIPAL AND AGENT — CONTRACT FOR SALE OF LAND — STATUTE OF FRAUDS — PART PERFORMANCE — ESTOPPEL. — When a contract for sale of land is made by an agent in the presence of the principals by a memorandum in writing, and at the request of one of them the money is immediately handed to the other, the sale is in legal effect made by the principals, and if possession is taken and valuable improvements are made by the vendee under the contract with the knowledge of the vendors after such payment of purchase-money, a written appointment of the agent is not essential, and the owners are estopped from denying his want of authority, and from disputing the validity of the sale. Nor can they be heard to aver their want of knowledge of the location of the lot, attributable to their want of care.

ID. — USE OF CORPORATE NAME IN CONTRACT OF SALE. — When the owners of land use a corporate name in making a contract for its sale, and instruct their agent to prepare and sign the contract in that form, they cannot impeach the contract because made in such name.

ID. — CERTAINTY OF TERMS — SPECIFIC PERFORMANCE. — A memorandum of a contract for the sale of land accurately describing it, and the amount and time of payments therefor, is sufficiently certain to be specifically enforced, notwithstanding it is declared to be "subject to the conditions in a formal contract as to clearing streets, improvements, etc.," and provides that it shall be surrendered "on delivery of formal contract or deed."

ID. — SPECIFIC PERFORMANCE — LACHES — STATUTE OF LIMITATIONS — There is no absolute bar to an action for specific performance of a contract for sale of land short of the statute of limitations. Shorter delays may sometimes be fatal, but each case depends upon its own circumstances. The circumstances of this case held to show no ground of objection to the action by reason of plaintiff's delay in bringing the action.

ID. — CONSTRUCTIVE NOTICE — REGISTRY OF DEEDS. — The doctrine of constructive notice by registry of deeds has application only to subsequent purchasers or encumbrancers.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*C. E. Sumner*, and *Chapman & Hendrick*, for Appellant.

*Olney, Chickering & Thomas*, for Respondent.

WORKS, J.—This is an action by the appellant for the specific performance of a contract to convey real estate. The findings of the court were, in substance, that one Mills and one Wicks, being in possession of the lot in controversy, and a large number of other lots in Pomona, in this state, under a contract of purchase, began the sale thereof, and, for the purpose of making such sales, appointed one F. H. Hall to be the manager and agent at Pomona, aforesaid; that Hall had not *full* authority to act for said Mills and Wicks in the sale of the lots and lands, but that the court was unable, from the evidence, to define with exactness the extent of his general authority; that the said Hall, under and in pursuance of his appointment and authority, acted as such manager and agent for the sale of said lots and lands, and was, by reason thereof, known and recognized as such manager and agent by the general public, and by the said Mills and Wicks, and by the purchasers mentioned; that on the twenty-eighth day of September, 1882, the said Mills and Wicks did, by their said agent, Hall, make and enter into a verbal agreement with one William Bayles, agreeing to sell, and he agreeing to purchase, the lot of land in controversy for the sum of two hundred dollars; that when said agreement was made said Mills and Wicks were both personally present, and the agreement for them by Hall was made then and there, but not under the personal direction of Mills and Wicks; that Bayles then and there, in pursuance of said agree-

ment, paid Hall the sum of fifty dollars on the purchase price, and Hall, being such agent, paid said sum, as and being such part payment of said purchase price, over into the hands of said Wicks upon the request and direction of said Mills, and wrote and delivered to said Bayles the receipt therefor, in the words and figures following:—

"$50.                 POMONA, September 30, 1882.

"Received of W. M. Bayles fifty dollars on account for lot 6, block 32, for which a contract will be given on payment of balance of one third of contract price of two hundred dollars.

"F. H. HALL, Agent for Pomona Company."

That within a few days thereafter, on the thirtieth day of October, 1882, in pursuance of their plan for the sale of said lots and lands, said Mills and Wicks formed with others a corporation by the name of the Pomona Land and Water Company, with its capital stock divided into 5,000 shares; that Mills and Wicks owned 4,180 of said shares, and the other three share-holders necessary to form a corporation represented 820 of said shares; and for the purpose of carrying out said enterprise for the sale of said lots and land, they transferred the same to said corporation, excepting from the operation of said assignment all lots and land already conveyed to them by Louis Phillips, and that Hall continued to act as agent for the sale of said lots in the same manner as before said transfer; that said Hall made thirty-nine sales of said lots and lands, including the sale of the lot in question, to Bayles, as such manager and agent for Mills and Wicks; that before they assigned the same to said company, and afterward, the said Mills and Wicks supplied said agent, Hall, with printed blanks, containing the name of the said Pomona Land and Water Company printed thereon as vendor, and instructed the said agent, Hall, to use the same in making contracts for sales thereof to be made, and expressly directed and instructed said agent to fill out said blanks with the terms of sale

and deliver them to all purchasers, including said Bayles, to whom sales of lots had already been made by them in their individual capacity; and that Hall carried out said instructions, whereby Bayles was induced to believe that said agreement was adopted by said company; that on the twenty-first day of September, 1882, Bayles, under and in pursuance of his said agreement, paid to Hall, then acting as the manager and agent for the sale of said lots and lands, the further sum of sixteen dollars, and that Hall, pursuant to said instructions, given as aforesaid, filled out and delivered to Bayles one of the said printed blanks, supplied by Mills and Wicks for the purpose, in the words and figures following:—

"POMONA LAND AND WATER COMPANY,

"POMONA, LOS ANGELES, September 28, 1882.

"Received of William Bayles fifty dollars, deposit on contract for purchase of lot six (6), in block thirty-two (32), according to the map of Pomona. Contract duly recorded in book 3, pages 90 and 91 of miscellaneous records of Los Angeles County, subject to the conditions in a formal contract as to cleaning streets, improvements, etc.; said price being $200, and terms of payment, $16 to make the one third on demand, $67 payable September 28, 1883, $67 payable September 28, 1884. Deferred payments to bear eight per cent interest, payable annually; and the said William Bayles, in consideration of the premises, hereby agrees to purchase said property for the same price and on the terms above set out, this to be surrendered on delivery of formal contract or deed.

"F. J. HALL,

"Manager of Pomona Land and Water Company."

That on the twenty-fourth day of January, 1883, the said Bayles, for a good and valuable consideration, assigned and transferred to the plaintiff all his interest in said lot and said agreement, and the plaintiff thereupon entered into possession of said lot, with the knowledge and consent of Hall, agent as aforesaid, plowed the whole

of said lot, and put substantial improvements thereon; that said Bayles and the plaintiff kept and performed all the conditions of said agreement to be kept by them, paid the sum of $66, the first payment of said purchase price, and tendered to the Pomona Land and Water Company the sum of $67 and interest thereon to date, according to the terms of said agreement; that on the twenty-eighth day of September, 1883, and on the twenty-ninth day of September, 1884, plaintiff tendered the said company the sum of $134 and interest thereon to date, being the whole balance of said purchase-money, according to the terms of said agreement, and demanded the execution of a deed of conveyance, and the company refused to accept said payments and execute the deed, but made no objections to the terms thereof, or to said tenders; that on the twenty-seventh day of November, 1886, he tendered to the defendant the sum of $176.90, being the full amount of the purchase-money remaining unpaid, and tendered a deed of bargain and sale for execution, and the defendant specified no objections to said tender, nor to the terms of said conveyance, but declined to receive said purchase-money, and refused to execute said conveyance; that by a deed dated December 4, 1882, Louis Phillips conveyed said lot to said Mills and Wicks, and by a deed dated February 23, 1883, said Wicks conveyed his interest therein to said Mills, and by a deed dated September 21, 1883, while plaintiff was in possession of said lot under said agreement, Mills, knowing that plaintiff was so in possession, conveyed said lot to one Charles French, who had full knowledge of plaintiff's possession under said agreement, and the other facts herein set forth, and that French was in the employ of said Pomona Land and Water Company under said Mills and Wicks, and paid no consideration for said conveyance; that Mills died on the twentieth day of April, 1884, and his wife was appointed his administratrix, and included this lot in the inventory of the property of said estate; that in May,

1883, the plaintiff had notice that the Pomona Land and Water Company repudiated the alleged agreement; that said French, from the time of his deed from Mills, asserted to plaintiff his ownership of the lot, and disputed the possession thereof; that French, some time in 1884, removed plaintiff's improvements, but plaintiff replaced them within two or three months, and for a short period of that year leased the premises, and that the house and fence erected by him remained on the property until removed by the defendant in October, 1886; and that French, for a short time just previous to his deed to defendant, leased the property, and that the defendant entered on the lot October 20, 1886, but did not oust plaintiff; that in February, 1883, said Wicks, as attorney for the Pomona Land and Water Company, wrote the plaintiff a letter notifying him that Hall had acted without authority in making the contract, and that the same was repudiated, and offered him one hundred dollars if he would return the receipt for cancellation, but that Wicks had not been authorized by the company to write such a letter; that neither Wicks nor Mills knowingly or intentionally ratified or confirmed the contract, or voluntarily accepted any benefits or obligations thereof; that the said Mills and Wicks, by their acts and conversation aforesaid, induced the said Bayles to purchase said lot from them by their said agent, Hall; that said printed blank was used, and the agreement in the name of the Pomona Land and Water Company, delivered as aforesaid by Hall, agent as aforesaid, and accepted by Bayles, because Mills and Wicks instructed Hall to use the same for that purpose, and not by reason of any fault or neglect of said Bayles or the plaintiff, and the use thereof caused Bayles to believe that said agreement was adopted by said company, promoted by said Wicks and Mills as aforesaid; that the use of said printed blanks caused the plaintiff to believe that said sale was in fact originally made by said company, as therein specified; that Mills and Wicks never

demanded payment of the balance of the purchase-money of said lot, nor communicated to plaintiff the fact that said sale was made by them in their individual capacity, but, on the contrary, further gave the plaintiff cause to believe that said sale was made by said company, and denied that plaintiff had any interest in said lot, and attempted to disaffirm said sale, alleging as a ground that said Pomona Land and Water Company never acquired title to said lot, and that therefore said Hall never had authority to sell the same; that all the deeds of conveyance referred to above were recorded immediately after their respective dates, and the plaintiff had constructive notice thereof; and that about the time the defendant ousted plaintiff, as aforesaid, plaintiff first learned that said sale was made in the actual presence of said Mills and Wicks, under their direction, for them, in their individual capacity, by said agent, Hall, and that said Mills and Wicks had taken a conveyance of said lot from said Louis Phillips to themselves, and recorded the same on the day preceding said transfer of their said contract with Louis Phillips to said company, and thereby prevented said company from acquiring title to said lot; that the plaintiff's supposed cause of action is not barred by the statute of limitations. This suit was commenced December 10, 1886.

On these findings the court concluded in favor of the defendant, and the plaintiff appeals.

It is contended by the plaintiff that he was entitled to judgment on these findings, and that the cause should be reversed on that ground.

In this contention the appellant is clearly right.

We do not know upon what ground the court below concluded that the plaintiff's case was not made out, but counsel for respondent attempt to justify the decision on four grounds: 1. That the original receipt given by Hall did not constitute a sufficient contract of sale; 2. That Hall had no authority to make the sale, not having been

authorized in writing; 3. That the original receipt, and the contract subsequently given by Hall, were not executed by the then owners, Wicks and Mills, but by the Pomona Land and Water Company, in its name, and was otherwise indefinite and insufficient; 4. That the action was commenced too late.

In discussing these questions, counsel for respondent have not confined themselves to the findings, but have very ingeniously used the findings where they support their case, and where they are against them the findings are ignored, and the evidence in respondent's favor, and against said findings, is used instead. By thus combining the two, and holding fast only to that which seems to them to be good, they have convinced themselves that " the case is too plain for argument." This we cannot do, and perhaps for that reason we are unable to agree with counsel. Taking the facts as we have them in the findings, we consider the points relied upon by the respondent.

1. As to the point that the original receipt given at the time the first payment of fifty dollars was made was not sufficient, we agree with counsel, but this was not intended to constitute the contract, but simply as a memorandum showing the payment of the money, and it was stated therein that a contract would be given upon the payment of the balance of the one-third payment; and such a contract was afterward executed. For this reason we regard this receipt as of no great importance.

We regard the question of Hall's authority to *make the sale* as of no greater consequence in view of the other facts found. It may be conceded that an appointment in writing was necessary to authorize him to make a binding sale (Code Civ. Proc., sec. 1624); and that no subsequent parol ratification or acknowledgment by the principal is sufficient. (*Videau* v. *Griffin*, 21 Cal. 390; *Blum* v. *Robertson*, 24 Cal. 142.) But here the sale was in legal effect made by the principals. (*Videau* v. *Griffin*,

21 Cal. 391, 392.) It was made in their actual presence, and at the request of one of them the money paid was handed to the other immediately. It is true, the court finds that the sale was not made under the personal direction of the owners, and that they did not knowingly or intentionally ratify or confirm the said contract of sale, nor voluntarily accept any of the obligations or benefits thereof, but these conclusions are clearly disputed by the facts found. They did voluntarily receive the cash payment at the time it was made, and the court finds that they afterward instructed Hall to make a contract for the property. The facts show that the only reason for the finding that they did not knowingly or intentionally ratify or affirm the contract of sale was, that they did not know the location of the lot, or in other words, the lot was a better one than they supposed when they sold it and accepted the purchase-money, and therefore they wanted to escape from the contract.

The findings further show that the purchaser took possession under his contract, and made valuable improvements on the property with the knowledge of these parties. Beside, the court finds, throughout these findings in various places, that Hall was the agent of these parties, and that they did the acts relied upon by the plaintiff through him. The court finds in one place that Hall did not have "full" authority, but what is meant by the word "full" in this connection is left to conjecture. The finding on the point is:—

" All allegations of the several paragraphs of the complaint, which are respectively numbered and marked 2, 3, 4, 5, and 6, are true, except that F. J. Hall did not, as alleged in paragraph 2, have full authority to act for the said Mills and Wicks in the sale of the lots and lands referred to therein (but if it be essential, I am unable, from the evidence, to define with exactness the extent of his general authority)."

This finding as to authority relates, not to this sale

particularly, but to an allegation in the complaint that Hall was appointed to be manager at Pomona, "with full authority to act for them," in the sale of all of the lands then held for sale by them at that place; and the following specific allegation of the complaint, relating to this particular sale, is found to be true:—

"That on the twenty-eighth day of September, 1882, the said Mills and Wicks were in possession of the said lot of land hereinabove particularly described, under said agreement for the purchase thereof from Louis Phillips, and did then at Pomona aforesaid, by their said agent, F. J. Hall, make and enter into a verbal agreement with one William Bayles, whereby the said Mills and Wicks agreed to sell, and the said William Bayles agreed to purchase, the said lot of land described as lot 6, as aforesaid, for the sum of two hundred dollars, on the terms set out in the seventh paragraph of this complaint."

And the court further finds in express terms that the allegation of the complaint is true that they instructed their said agent to make out this and the other contracts, where sales had been made, and how to make and execute them, and that in pursuance of these instructions he did execute the contract, and that the plaintiff, as the assignee of said contract, entered into possession and made improvements.

This, it seems to us, was a sufficient finding of the agency, but if not, the conduct of the vendors of the property was such as to estop them from denying it, or asserting any claim to the property on the ground of his want of authority. To permit the vendors of land to repudiate the acts of their supposed agent under such circumstances would be to sanction a clear and palpable fraud, and this cannot be done even under the guise of the statute of frauds. (Sedgwick and Wait on Trial of Title to Land, secs. 844–847; Fry on Specific Performance, 259, 260; Bigelow on Estoppel, 3d ed., 470, 513.)

It is a well-settled rule of estoppel that one who with knowledge accepts the proceeds of an unauthorized sale of his property is estopped to dispute the validity of the sale. (*Goodman* v. *Winter*, 64 Ala. 410, 433; 38 Am. Rep. 13; *France* v. *Haynes*, 67 Iowa, 139; *Schenck* v. *Sautten*, 73 Mo. 46; *Moore* v. *Hill*, 85 N. C. 218; *Field* v. *Dovon*, 64 Wis. 560; *Booth* v. *Wiley*, 102 Ill. 84, 107. See also, as bearing on this point, *Escolle* v. *Franks*, 67 Cal. 137.)

In this case the vendors stood by and saw the sale made, and accepted the purchase-money in the presence of the vendee, and the court finds that they "by their acts and conversation aforesaid induced the said Bayles to purchase said lot from them by their said agent, Hall," which, it seems to us, presents the strongest possible case against them. If they did not know the location of the lot that was being sold, as claimed, their want of knowledge must be attributed to their own want of care. They cannot, in view of these facts, be heard to deny such knowledge.

It is contended that this was not the contract of Mills and Wicks, but of the Pomona Land and Water Company. It is true, the contract is signed by Hall as the manager of the company, but the findings show clearly that the contract was that of Mills and Wicks, and that they had, before the organization of the corporation, adopted and used the name afterward given to the corporation, and that they instructed their agent, Hall, to prepare and sign the contract in that form. They had the right to adopt and contract in a name not their own, and having contracted in that name and received the benefits thereof, they cannot be allowed to impeach it on that ground.

Again, it is urged that the contract was too uncertain and indefinite to authorize the relief sought. We do not think so. The land is accurately described, and the amount and time of making the payments are clearly stated. There are but two elements of uncertainty in

the contract. It is made "subject to the conditions in a formal contract as to clearing streets, improvements, etc." This evidently refers to a "formal" contract that was expected to be made in the future, and if it was too uncertain to uphold this clause or to bind the vendee to the condition attempted to be imposed, it can furnish no ground upon which the vendors could repudiate the contract. It is nowhere shown that the refusal to consummate the agreement was ever placed on any such ground, or that any question was ever made as to the conditions intended to be imposed by this clause in the contract. If such a "formal" contract existed, and the parties contracted with reference to it, the question might have been raised ·in respect to the form of the deed, when demanded, and if a deed with the conditions relied upon had been refused, the vendors might have been justified in refusing to execute one without such conditions. But we do not regard this as such an element of uncertainty as will vitiate the whole contract. The court finds that no objection was made to the form of the deed tendered for execution when the purchase-money was tendered.

The further objection made to the contract is, that it provides that it shall be surrendered "on delivery of formal contract or deed." The apparent reason for having drawn the contract in such form as to call for either a contract or a deed is, that, at the time the contract was executed, the vendors had no deed, but were holding under a contract. It was the evident intention that if they procured a deed before the final payment of the purchase-money, a deed was to be executed; if not, a contract for a deed. But whether this be so or not, it clearly appears from the contract itself that the vendee was to have their title to the property upon payment of the purchase-money, and the time was definitely fixed by the time of the final payment of the purchase-money and surrender of the contract.

We think the contract was sufficient to authorize the relief prayed for.

Lastly, it is claimed that the action was brought too late. Cases are cited by counsel in which shorter delays were held to be fatal, but each case must depend upon its own circumstances. There is no absolute bar short of the time fixed by the statute of limitations. There is nothing of unfairness or injustice in allowing the appellant his remedy in this case after the delay complained of. It is perfectly apparent from th findings and the evidence that there was a systematic and persistent effort all along on the part of Mills and Wicks to mislead the plaintiff and prevent his getting title to the property. It was not transferred to the corporation, but he was allowed to believe it was, if not led to that belief by these parties. Wicks conveyed to Mills, and Mills conveyed to one French, an employee, without consideration for the conveyance, and French, acting undoubtedly for Mills, endeavored to get possession of the property and claimed that he was the owner, and tore down the appellant's improvements. That French held the title for Mills, and with the sole purpose of attempting to deprive the appellant of the property, is apparent from the fact that upon the death of Mills, although French held Mills's deed for the property, it was inventoried by the widow as a part of the estate. French conveyed the same to the respondent, who admits, in his brief in this court, that he holds it as a trustee for the widow. In other words, so far as it affects this question of delay in bringing the action, this property must be regarded as having been the property of the original vendors all along, and that they have been attempting to keep it out of the appellant's reach. Beside, one of the very material facts in the case, and one without which probably he could not have recovered, was, that this contract was made in the actual presence of the owners, and the money paid to and received by them, and this was not discovered by the appellant

until a very short time before bringing this suit. Without a knowledge of this fact, if there were no others tending to excuse his delay, he might well have hesitated about bringing the suit; and taking this circumstance, together with the conduct of the vendors, we are not inclined, on the mere ground of delay in bringing the action, to deny the appellant his rights.

The court finds that the deeds bringing the title down to the respondent were recorded immediately after their execution, and were constructive notice to the appellant. Conceding this, it makes the effort to mislead the appellant only the more apparent, but the doctrine of constructive notice has application only to a subsequent purchaser or encumbrancer, and can have no bearing on the question presented here.

The finding that the Pomona Land and Water Company notified the appellant that it repudiated the contract was immaterial, for the reason that that company never had any title to the property, and was not a party to the contract, or interested in it in any way.

Judgment and order reversed, with instructions to the court below to conform its conclusions of law to this opinion, and render judgment on the findings in favor of the plaintiff.

PATERSON, J., THORNTON, J., McFARLAND, J., and SHARPSTEIN, J., concurred.

Rehearing denied.