[Civ. No. 5813.   Second Appellate District, Division One.—December 13, 1928.]

A. H. LAACK et al., Appellants, v. FRANK M. DIMMICK et al., Respondents.

Meserve & Meserve and Timon E. Owens, for Appellants.

Schweitzer & Hutton and B. R. Ware for Respondents.

CRAIL, J., *pro tem.*—This is an action to recover a real estate broker's commission arising out of the sale of real estate. Judgment was entered in favor of both defendants and the plaintiffs appeal.

On February 1, 1923, F. M. Dimmick individually entered into an "exclusive agency contract" with Laack & Williams by which they were employed for thirty days and until the agreement was canceled in writing to negotiate the sale of certain real property located at the northwest corner of Sixth and Westlake, in the city of Los Angeles, which real property the owner agreed to sell to such purchaser as the agents might procure within the time aforesaid, at the price of $100,000 net to the owner. The terms of sale

were to be $40,000 in cash, buyer to assume a mortgage of $60,000; and further terms were that the agents were appointed attorneys-in-fact of the owner with full power to execute an agreement of sale with any purchaser obtained within the time aforesaid, binding the owner to sell said property upon the terms aforesaid and to convey same to the purchaser by deed of grant and to furnish, without expense to the purchaser, a guarantee certificate of title showing title in the owner at the time of sale; also, that the agents should be entitled to a commission equivalent to the difference between the purchase price above specified and the price at which the agents might procure a purchaser, which commission the owner agreed to pay the agents when a purchaser was obtained; also, that said commission, at the option of the agents, might be retained by them out of the moneys of the owner coming into their possession on account of the purchase price; and that the title to said property then stood in the name of Lucile M. Dimmick. Later, after it became apparent that the plaintiffs would be unable to sell the property within the time agreed, Mr. Dimmick inserted a figure "5" after the figure "1" in the date of the contract, thereby giving an apparent additional ten days' life to the agreement, although, as heretofore stated, the agreement was to remain in effect until canceled in writing. The contract was signed "Lucile M. Dimmick, per F. M. Dimmick," and there was substantial evidence that Mr. Dimmick was not authorized in advance to append her name thereto; but it is the contention of the appellants, both that she ratified the contract and that the circumstances were such that she is estopped from denying her signature to the agreement. These matters will be hereafter discussed in this opinion.

After the execution of the contract the plaintiffs used their best efforts to sell the property, listing and advertising the same and showing it to prospective buyers.

In a few days the plaintiffs interested George A. Eastman in the property, and thereafter persuaded C. G. Becker to join him in the purchase of it. The contract of purchase was entered into on March 16, 1923, signed by the plaintiffs on behalf of the owner and by C. G. Becker as purchaser, and was designated a "sales deposit receipt." It complied in all respects with the terms upon which the

plaintiffs were authorized to sell the property, unless it were with respect to an escrow and with respect to the time within which the escrow was to be completed. These two matters will be taken up later. Eastman and Becker paid to Laack & Williams $2,500 as part payment on the purchase price; but the transaction was handled in Becker's name, although Eastman in fact was interested in the purchase. On the same day Laack & Williams mailed a letter addressed to both of the defendants and included a check for $1,000 payable to them. The check was dated March 16th and was cashed March 20th. It was payable to the order of both defendants and had on its face a notation "Deposit and part payment of Becker offer on northwest corner Sixth and Westlake." The letter which accompanied the check was addressed to both of the defendants. In it they were advised of the sale to Becker, and their attention was called to the fact that the sale was made under the exclusive agency contract given plaintiffs, dated February 15, 1923, and they were notified that the terms of the sale were those embodied in said exclusive agency contract; they were also advised that the necessary instructions to the title company, together with the necessary papers, would be submitted to them on the following day, and were told that the instructions provided that the escrow must be closed in the usual thirty days provided by the title company; they were also told that the $1,000 check was inclosed as deposit and part payment of the purchase price. On March 23, 1923, C. G. Becker assigned all his right, title, and interest in the contract of purchase to Eastman upon the payment to him of $1,250. On March 27th Laack & Williams gave written escrow instructions to the Title Insurance & Trust Company, and on the same day C. G. Becker, as purchaser, gave his instructions to the title company.

Two days later, March 29, 1923, defendant Dimmick and attorneys on behalf of both defendants called at the office of plaintiff Ralph O. Williams. At that conference Mr. Dimmick tendered a deed executed by both of the defendants conveying the property described in the exclusive agency contract and in the sales deposit receipt to C. G. Becker. At the same time a certificate of title to the property, "brought down to date," was tendered to the plaintiffs. Defendants did not introduce this certificate in evidence and

it is not in the record. Later in the conference said Williams was served with a written notice addressed to Laack & Williams of the cancellation of the agency contract. This notice was signed by both defendants, and at the same conference Mr. Dimmick offered to return the $1,000. The next day, March 30, 1923, plaintiffs addressed a letter to both defendants inclosing escrow instructions dated March 27, 1923, for their signatures, and respondents received this letter on the day it was mailed. On April 12, 1923, the full amount of money necessary to complete the deal, $46,250, was deposited with the title company, as escrow-holder, to complete the purchase, and on the same day the plaintiffs wrote the defendants a letter in which they advised them that on that day the purchasers had placed with the title company the necessary cash to complete the sale under the contract and demanded that the respondent immediately place in said escrow, of which they had theretofore been advised, the deed and certificate of title. Six days after the money was so deposited the attorneys for the defendants wrote a letter to the plaintiffs, reminding them that Mr. Dimmick had tendered a deed to the property described in plaintiffs' letter of April 12th, and had given them ample time to make good on the purchase price thereof. In the same letter they also referred to the purchaser as a dummy purchaser and refused to go ahead with the deal. It will be noted that at this time all of the money was in escrow and the refusal is in a letter in which there is a reference to appellants' letter of April 12th, in which the Dimmicks were notified that the money had been deposited with the title company. On May 8, 1923, Becker and Eastman₀ tendered performance on their part through escrow, and finally, on May 23d, upon Dimmicks' refusal to proceed, the escrow was closed and all moneys withdrawn.

The complaint alleged that both the defendants entered into the exclusive agency contract and the court found that defendant F. M. Dimmick entered into the same and that "said F. M. Dimmick at the same time signed the said agreement with defendant Lucile M. Dimmick's name by himself, without authority." The court further found "that at the time of the execution of said agreement (sales deposit receipt or contract of sale dated March 16, 1923) by said Laack & Williams and said C. G. Becker, said C. G.

Becker was not ready or able to purchase the said property by the payment of $40,000 cash therefor, and at no time or at all did C. G. Becker or George A. Eastman or anyone else ever agree to buy the said property for the sum of $40,000 cash and the assumption of a $60,000 mortgage thereon, or in accordance with the terms and conditions of the agreement (exclusive agency contract) marked Exhibit A and attached to said complaint; and that said George A. Eastman at the time of the execution of said contract (of sale of March 16, 1923) above set out *in haec verba*, was not able or ready to purchase said property by himself or in connection with said C. G. Becker, and said C. G. Becker would have been obliged to sell and dispose of certain securities before he would have been ready or able to purchase said property upon any terms whatsoever, and said George A. Eastman would have had to sell certain real property before he would have been ready or able to consummate said sale in accordance with the terms of the contract marked Exhibit A; [therefore] it is not true that said plaintiffs obtained as purchaser for said property any person who was ready or willing or able to carry out and perform the terms and conditions upon which said property could have been sold by said plaintiffs.''

The findings of the court were such that judgment should have been entered in favor of the plaintiffs against both of the defendants for the full amount prayed for, except a necessary finding that Mrs. Lucile M. Dimmick was bound by the exclusive agency contract and a finding that the purchaser or purchasers were ready, willing, and able to buy upon the terms set forth in the contract of employment; and as to both of said matters we have set out above the findings of the court substantially in full.

Two questions are before us for consideration: First. Was the exclusive agency contract binding on defendant Lucile M. Dimmick, either by reason of ratification or by way of estoppel? Second. Was the purchaser whom plaintiffs obtained for the defendants able, ready, and willing to purchase the property on the terms for which defendants had authorized the plaintiffs to sell?

In addition to the matters heretofore set out, there are other facts and circumstances in evidence bearing upon the question whether or not the exclusive agency contract was

binding on Mrs. Dimmick. On March 29, 1923, she authorized her husband and her attorneys as her agents to tender to the plaintiffs a deed to the property which she herself had signed. On the afternoon of that date they tendered to one of the plaintiffs this deed, together with a certificate of title. And upon his failure to produce $40,000 *in cash* forthwith, presumably out of a blue sky, they served upon him the following writing, which Mrs. Dimmick had also signed for the purpose:

"You are hereby notified that the exclusive agency contract executed by the undersigned Lucile Dimmick . . . to you, dated February 1st, 1923, . . . is hereby cancelled and revoked.

"(Signed)   FRANK M. DIMMICK.
"(Signed)   LUCILE M. DIMMICK."

This was not a repudiation of the due execution of the exclusive agency contract, but a direct acknowledgment of it in writing. Furthermore, this acknowledgment, in the light of the tender of the deed which preceded it, was a ratification in writing of the contract down to the time of the revocation of it. Or if it be not a clear ratification in writing, then it is so nearly such that it will weigh heavily in the scales on the question of whether Mrs. Dimmick was estopped from denying the due execution of the contract. This we will next consider.

It is the law of California that a ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified. (Civ. Code, sec. 2310.) Since the authority to sign Mrs. Dimmick's name to the contract was required to be in writing, it follows that to be valid a ratification of the contract must be in writing. Herein lies the chief distinction between an authority by ratification and an authority by estoppel. Such a writing is not required in an estoppel, even though the original authority required it. (1 Cal. Jur. 731.)

It has been said that the statute of frauds was intended as a shield and not as a sword. And courts will not permit a litigant to use that statute as an instrument with which to perpetrate fraud or oppression. It is on this theory largely that, although an act which requires written authority can be ratified only in writing, a party may be estopped to deny his agent's authority by acts without writ-

ing. (*Blood* v. *La Serena L. & W. Co.*, 113 Cal. 221 [41 Pac. 1017, 45 Pac. 252]; *Karns* v. *Olney*, 80 Cal. 90 [13 Am. St. Rep. 101, 22 Pac. 57].)

In this case the brokers went ahead under the terms of their contract, assuming that it was entered into by authority of Mrs. Dimmick. They spent much time and money in finding a purchaser. They bound the purchaser in a written instrument to purchase the property and took his money as a deposit on the purchase price. They sent $1,000 to Mr. and Mrs. Dimmick as a part of the purchase price and defendants retained the same. Mrs. Dimmick signed a deed conveying the property to the purchaser, and insisted upon the payment of the balance of the purchase price forthwith. She acknowledged in writing the execution of the contract as binding upon her, and in the same writing revoked and canceled the same. She was not depending upon the statute of frauds at that time. Rather she was seeking a stealthier method of escape from performance on her part of a solemn covenant which had already been performed in full by the other parties to it. To permit her thereafter to escape by the avenue of the statute of frauds would be to permit the perpetration of a fraud. Our courts will not sanction such a procedure.

Respondents contend that to properly establish either a ratification or an estoppel, the action of Mr. and Mrs. Dimmick must have been predicated upon a full understanding of the facts (citing *Schader* v. *White*, 173 Cal. 441 [160 Pac. 557]; Civ. Code, sec. 2310; *Munroe* v. *Fette*, 1 Cal. App. 333 [82 Pac. 206], and other cases). It is the rule that a confirmation or ratification of the unauthorized acts of an agent, in order to be effectual and binding on the principal, must have been made with a full knowledge of all material facts, or its equivalent, and that ignorance, mistake, or misapprehension of any of the essential circumstances relating to the particular transaction alleged to have been ratified will absolve the principal from all liability by reason of any supposed adoption of or assent to the previously unauthorized acts of an agent. (1 Cal. Jur. 778, and cases cited; *Munroe* v. *Fette*, 1 Cal. App. 333 [82 Pac. 206].) There are three answers to this contention. (a) When ratification is proved the inference necessarily follows that it was with knowledge of the facts, and if there was

any mistake or misapprehension that fact must be shown by the party who claims the mistake or misapprehension. (1 Cal. Jur. 778, and cases cited.) ■ (b) Mrs. Dimmick, as well as Mr. Dimmick, had full knowledge of all material facts. The check for $1,000 of March 16, 1923, with the reference on its face to the contract of sale to Becker was made payable to both the Dimmicks and was indorsed by both. The check came in a letter addressed to both defendants, advising both that the contract of sale was made by the authority given the plaintiffs in the exclusive agency contract, and that the terms of sale were those provided in that contract. Reference was also made in the letter to the check. It necessarily follows that the payees of the check knew, or in the exercise of ordinary care should have known, the terms of the contract, in the absence, of course, of fraud or concealment, neither of which is supported by any substantial evidence. The evidence is to the contrary. Mrs. Dimmick admitted in her testimony a conversation with her husband on the evening of March 16, 1923, in which he showed her the letter and the check; and Mrs. Dimmick testified that he showed her a copy of the contract on that occasion, and also that a few days later and before the tender of the deed of March 29, 1923, he went over the letter with his wife. ■ (c) The contract of sale entered into by the plaintiffs on behalf of the defendants complied with the terms of, and the authority vested in them by, the exclusive agency contract. There was no substantial difference in their terms and, therefore, no mistake, inadvertence, or misapprehension on the part of the defendants. But this phase of the case will be more properly discussed in that part of the opinion which deals with the question whether the purchaser was able, ready and willing to buy on the terms provided in the exclusive agency contract. And there is no substantial difference between the terms of sale as disclosed in the letter of March 16, 1923, and either or both of said instruments. Respondents have undertaken to set out these differences and, as is our duty, we will discuss them. Respondents contend that they were not informed by the letter and should have known: (a) That the sale price was $107,250 instead of $100,000, as stated in the letter; (b) that George A. Eastman was an interested party; (c) that the sale deposit receipt consti-

tuted a mere option to buy, and was not in itself a binding agreement of sale; (d) that $2,500 was the amount received by plaintiffs upon account, and not $1,000, and (e) the injection of the prorating of insurance, rents, interest, and taxes. There is no merit in any of these contentions. ■
(a) The letter did not state the sale price at $100,000, but "at a price of $100,000 net to you," which was the sum provided for in the exclusive sales contract. ■ (b) While the letter did not state that Mr. Eastman was an interested party, the contract of employment provided for a contract of sale with "any purchaser." ■ Furthermore, the contract of sale held by Mr. Becker was assignable to Mr. Eastman or to anyone else without the consent of the defendants. (*Harris* v. *Miller*, 196 Cal. 8 [235 Pac. 981]; *Kemp* v. *Enemark*, 194 Cal. 748 [230 Pac. 441]; *Rued* v. *Cooper*, 109 Cal. 682 [34 Pac. 98].) ■ And the assignment carries with it all of the rights of the assignor (25 Cal. Jur. 700), but in nowise releases the personal liability of the assignor to the vendor. ■ And while the mere assignment of such a contract does not cast upon the assignee any of the personal liabilities imposed by the contract on the assignor, it is otherwise if the assignee claims the benefits of performance. (*Wilson* v. *Beazley*, 186 Cal. 437 [199 Pac. 772].) ■ And where the assignee stands able, ready, and willing to perform, there remains no question as to personal liability. In the absence of some showing to the contrary it will be presumed that the defendants in selling the property were interested in receiving the purchase price, not in the person or persons who would ultimately receive the title to the property. ■ (c) The sales deposit receipt contained an indorsement, signed by the purchaser, by which he agreed to all the conditions therein contained. It was a binding agreement of sale and was not in any sense a mere option to buy. ■ (d) The contract of employment provided that the commission, at the option of the agents, might be retained by them out of the moneys of the owner coming into their possession on account of the purchase price. ■ (e) As to the prorating of the rents and interest, the law would have done the same. ■ As to the prorating of the insurance and the taxes, these were details of the contract which were beneficial, not detrimental, to the defendants. Not to have prorated these items

would have caused the defendants loss, and we cannot take seriously the defendants' claims that the doctrine of estoppel does not apply, because they were not informed as to these matters.

The question whether the purchaser whom the plaintiffs obtained for the defendants was able, ready, and willing to purchase the property on the terms for which defendants had authorized the plaintiffs to sell, easily divides itself into two parts. (a) Was the purchaser able to buy the property, and (b) was he ready and willing to buy the property on the terms for which defendants had authorized the plaintiffs to sell?

It is the contention of defendants that "under the circumstances of the instant case it is apparent that the purchaser must not only be ready at the time of his announced desire to purchase, but continue to be able to respond as and when the seller presents his deed and certificate of title." It seems to be the idea of defendants that in order for a purchaser to be able to buy he must have the purchase price *on hand* in the form of money or to his credit at a bank at the time of his announced desire to purchase the property, and continue to keep it ready to respond as and when the seller presents his deed and certificate of title. Even at the time of the tender of the deed the defendant Dimmick spoke up and said: "You can't buy this property. You haven't got the $40,000 here today." Such is not the law in California. That "would be to lay down too drastic a rule governing business transactions of the kind presented." (*Russell* v. *Ramm*, 200 Cal. 348 [254 Pac. 532].) Few except bank messengers or crooks carry around with them so large a sum as $46,250. The true rule in the instant case may be stated as follows: The purchaser must be able to buy; and the word "able" means financially able; this does not mean, however, that such purchaser must have all the money in his immediate possession or to his credit at a bank, but only that he must be able to command the necessary funds to close the deal within the time required. Even where the purchaser was not personally able to buy, it was said that "it is sufficient if he has arranged so that these funds will be available for payment when the time comes to close the transaction, although part of it be obtained on the purchase property itself." (*Pellaton* v.

*Brunski*, 69 Cal. App. 301 [231 Pac. 583].) It is much more clearly sufficient if the purchaser has assets of greater value than the purchase price and a financial rating which will enable him to command the funds when needed. For in such event the purchaser is not only able to purchase but is able to respond in damages if he refuse to go ahead with the contract. Furthermore, the contract of sale provided that the balance of the purchase price was payable "within . . . days" from date upon the execution and delivery of a deed and a guarantee certificate of title showing title in the owner. ▮ Where a contract for the sale of realty does not fix the time for final payment, a reasonable time is allowed. (*McGibbon* v. *Schmidt*, 172 Cal. 70, 75 [155 Pac. 460].) ▮ Or, to state it in other words, the rule that a purchaser must be ready, willing, and able means, where no time is fixed in the contract, that he must be ready, willing, and able to carry out the purchase within a reasonable time. (*Bunyard* v. *Farman*, 176 Mo. App. 89 [161 S. W. 640].)

▮ Measured by the rules above set forth, both Mr. Becker and Mr. Eastman under the evidence were able to purchase the property, and there was no evidence to the contrary. Mr. Becker testified that he could have paid the purchase price on the day the contract was signed upon presentation to him of the deed and certificate of title; that his ability to have met the purchase price would not necessarily have depended upon someone else lending him the money; he had mortgages and clear land; he could have sold his mortgages and he could have sold his land; Mr. Eastman had just sold property on Berendo Street for $110,000; he (Becker) had personally sold over ten million dollars' worth of property, and it had always been agreed and understood that a man was to have time to effect title; he would not pay $40,000 or $50,000 over to someone whom he did not know anything about, or when he did not know whether the title was all right without going through escrow. Mr. Eastman testified that Mr. Becker told him prior to the assignment that the discount asked on his mortgages was so big that he did not wish to sacrifice, and asked him to carry the deal, which he agreed to do, and thereupon the written assignment was made; that on April 12th he deposited the $46,250 in escrow; that if he had known on

March 29th that a tender was to be made to him, it would probably have taken him a day or two to raise the money to close the deal, and in that case he would have taken steps to raise the money and could have used the other escrow (Berendo Street) as collateral. It is the sole contention of respondents in this regard that because Becker expressed an intention to "discount his securities in San Francisco" and because Eastman "had to sell some of his property or negotiate a loan," it is apparent that neither or both were able to pay $40,000 cash. But the cost or inconvenience to the purchaser of raising money is immaterial to the seller, provided the purchaser is able to command the money. Cases which seem to lay down a different doctrine are usually cases in which the purchaser has not assets sufficient to command the purchase price or cases where this distinction is not fully discerned.

There is another reason why it was not necessary for the purchasers to have the cash on their persons at the very instant of the tender of the deed. This reason is best stated in the words of respondents' brief, which are in bold black type, as follows: "Tender of March 29, 1923, was in Effect a Repudiation of Laack & Williams' Claimed Right to Make Contract Disclosed by Sales Deposit Receipt." The repudiation of defendants at that time was not based on the inability of the purchasers to complete the purchase, but upon the precedent requisite—the right of the plaintiffs to make the contract of sale. Such repudiation rendered it unnecessary for the purchasers to tender the cash required to bind the sale. (*Merzoian* v. *Kludjian*, 183 Cal. 422 [191 Pac. 673], 9 Cor. Jur. 600; *Smith* v. *Tatum*, 140 Ga. 719 [79 S. E. 775]; *McDermott* v. *Mahoney*, 139 Iowa, 292 [115 N. W. 32, 116 N. W. 788]; *Fiske* v. *Soule*, 87 Cal. 313 [25 Pac. 430].)

Were the purchasers ready and willing to purchase the property on the terms for which defendants had authorized the plaintiffs to sell? This is the final question for consideration. The readiness and willingness of a person to purchase is shown where he enters into a contract binding him to purchase. (4 Cal. Jur. 592, and cases cited.) And it remains only to consider whether the terms of the sales deposit receipt were authorized by the exclusive agency contract.

One of the contentions of respondents in this regard is stated as follows: "The brokers were hired to make a sale within thirty days, and not an agreement of sale, and if an agreement of sale was made, it was essential that the sale itself actually take place within the time limit of the contract." We have set out the terms of this contract regarding this matter in full in the early part of this opinion. The contract speaks plainly for itself. It does not so read.

Another contention of respondents is that "the contract executed by Laack & Williams was not authorized because the buyer was given a thirty-day option with many other advantages." But here again the contract of sale speaks for itself. It was not an option to buy, but a binding contract of sale; it was not for thirty days, but was a contract for cash payable within a reasonable time, as we have heretofore seen; the thirty-day clause being a mere forfeiture clause against the purchaser declaring a dead line beyond which a reasonable time might not extend; and there were not many other advantages or any other advantages, as we have also seen.

The final contention of respondents in this regard and the one most relied upon is this: that "a transfer through escrow was not contemplated by the agency agreement." This is the last trench to which respondents run for cover from the assaults which are hurled against the judgment of the trial court. By the exclusive agency contract the plaintiffs were authorized to execute in behalf of the defendants an agreement of sale binding the owners to convey the property to the purchaser "and to furnish, without expense to the purchaser, a guarantee certificate of title showing title in the owner *at the time of sale* free and clear," etc. The fundamental difference between a sale and an agreement to sell is that in the former the title passes when the contract is made, while in the latter it does not pass until later. (*Rosenberg Bros. & Co.* v. *Beales,* 56 Cal. App. 212 [205 Pac. 18]; *Blackwood* v. *Cutting etc. Co.,* 76 Cal. 212 [9 Am. St. Rep. 199, 18 Pac. 248].) The contract of employment therefore contemplates that the plaintiffs would execute a contract of sale under the terms of which the title would pass at some future time upon the payment of the purchase price by one party and the de-

livery by the other of a deed and a certificate of title showing title in the owner at the time title passed from the owner to the purchaser. Obviously a certificate showing title at any instant prior to the time title passed would not be one showing title in the owner at the time of sale. Obviously, also, the payment of the money and the delivery of the deed and certificate of title were to be simultaneous. The only practical way, known to us, by which this could be done was by recourse to an escrow. It is common knowledge that this is the general custom used in California for the completion of such contracts. Escrows are continually used in such transactions to insure safety and the exercise of good faith. The escrowee is the agent of both parties. Having in its possession both the purchase price and the deed it (usually a title company or bank) selects an instant when it can determine that title is in the vendor as the terms of the contract require; thereupon it accepts a delivery of the deed to itself as agent for the vendee and records the same, and as agent of the vendor receives the purchase price, at the same time in its dual capacity delivering and receiving the certificate of title. Strictly speaking, a certificate of title brought "down to date" is not a certificate of title "showing title in the owner at the time of sale," although the words are sometimes loosely used as synonymous. Only an instant is required to record an instrument affecting the title to real estate, by which the property might be, even the property in question might have been, heavily encumbered or sold outright to an innocent purchaser. Thus it is apparent that under the terms of the contract of employment an escrow was contemplated and the demand for an escrow was not a departure from the authorized terms of sale. ■ For the same reasons the tender in the afternoon of March 29, 1923, of a certificate of title brought down to date was not such a tender as would put the purchaser in default. ■ The custom of title companies in limiting their guaranties to 8:30 A. M. of the day the certificate is dated is so universal and so well known to everyone dealing in real property in this state that this court will not assume to be ignorant of it.

■ While the contract of employment made the positive statement that the property was owned by the wife

and for that reason it was made in the name of the wife and signed by her husband as agent, yet it developed at the trial, and the court found the fact to be, that the property was owned by husband and wife in joint tenancy. To permit the husband to escape liability under the contract upon the theory that he was not a party to it, when his sole reason for attaching his wife's name to it and not his own as principal was the false one that his wife was the sole owner of the property, would be to permit the husband to profit by his own fraud. Our courts are not so inefficient nor so futile in their efforts to dispense justice between litigants that they would permit this. To do so would be not dispensing justice but dispensing with it.

The findings of fact of the trial court which have been quoted in this opinion within quotation marks are hereby set aside. This court finds that the exclusive agency contract, dated February 15, 1923, is binding on the defendant Lucile M. Dimmick and that she is estopped to deny the authority of her husband to sign the contract for her. This court further finds that the plaintiffs found purchasers for the defendants who were able, ready, and willing to purchase the property on terms for which defendants had authorized the plaintiffs to sell, and the plaintiffs are entitled to their commission.

For the reasons given, the judgment is reversed, with directions to the trial court to enter a judgment in favor of the plaintiffs against both defendants in the sum of seventy-two hundred and fifty ($7250) dollars, with interest from April 12, 1923.

Houser, Acting P. J., and York, J., concurred.