[Civ. No. 5721.   Fourth Dist.   Oct. 17, 1958.]

FLEDA HAMRICK et al., Respondents, v. ACME CIGA-RETTE SERVICE (a Corporation) et al., Appellants.

Caidin, Bloomgarden & Kalman for Appellants.

C. E. Crowley for Respondents.

GRIFFIN, P. J.—In this action by plaintiffs-respondents, and cross-defendants, husband and wife, against defendants-appellants and cross-complainants for declaratory judgment under section 1060 of the Code of Civil Procedure involving the interpretation of and rights of the parties in an installation and service agreement, plaintiffs prevailed. The agreement involved (Exhibit 1) reads in part:

"In consideration of Acme Cigarette Service, . . . installing and servicing various cigarette vending machines in the undersigned's place of business $125.00 Advanced Commissions and other valuable consideration, the undersigned agrees to, and does hereby, assign and grant to ACME the exclusive right and privilege of selling cigarettes at said premises for a period of one year commencing with the 4th day of Sep-

tember, 1953, and thereafter from year to year unless sooner terminated by written notice sent registered mail by either party to the other not later than sixty (60) days prior to the expiration of the term, or any extension hereof; and during said period, further agrees not to permit any person, firm or corporation other than ACME to sell, trade in, or offer cigarettes for sale at said premises. The undersigned further states there is no other legal agreement in effect covering the sale of cigarettes at said premises.

"ACME agrees to maintain and service said machine(s) during said period and shall have full access to the undersigned's place of business during reasonable business hours for that purpose. ACME shall pay to the undersigned its prevailing rate of commission, subject to the express understanding that in the event of any change in the cost of cigarettes to ACME, or any change in or imposition of any tax on the sale of cigarettes, or in the ownership, use or operation of cigarette vending machine(s), the commissions to be paid by ACME may be changed accordingly without otherwise affecting this agreement, upon written notice to the undersigned of any such change. The undersigned agrees that if he shall sell and/or transfer his interest in the business during the term, or any extension, hereof, he shall, in that event, require that as a condition of said sale and/or transfer, the purchaser and/or transferee thereof shall accept this contract for the unexpired portion thereof and assume all of the terms, covenants and conditions thereof. In the event of a breach of this agreement, the undersigned agrees to pay all costs and attorney's fees which may be incurred by ACME by reason thereof. This agreement sets forth the complete understanding between the parties and no representations were made not appearing herein.

> "Trade Name    Coffee Cup Cafe
>                         Title
>
> (Signed) "By W. L. Hamrick
>              "636 W. 'A' St., Ontario, Calif.

"Approved and Accepted:

"Acme Cigarette Service

(Signed) "By John W. Wheelus."

The evidence is, and the court found generally that in accord with said written contract (Exhibit 1) defendants installed one of their cigarette vending machines in the prem-

ises of the Coffee Cup Café, in Ontario; that plaintiff Fleda Hamrick was and is the sole owner, as her separate property; that plaintiff husband never had any interest therein; that on September 4, 1953, defendant company, acting through its agent, defendant Wheelus, agreed orally with plaintiff wife that said defendant could place said machine, then owned by defendants, in her place of business "for a period of one year" at the agreed rental of $125, paid in advance; that defendant Wheelus, knowing Mrs. Hamrick was the sole owner of the café, "procured" the husband, W. L. Hamrick alone to sign an agreement in her absence and that he represented to the husband that Exhibit 1 was merely a receipt and that if he would sign it, he could show his employer, "Acme Cigarette Service" assurance that the machine could remain in said café; that no copy of said agreement was given to nor left with either plaintiff; that about July 1, 1954, Wheelus interviewed plaintiff wife and endeavored to "procure" her to enter into an agreement that would provide that said vending machine should remain in her café for one year and that she then verbally informed him that the machine must be removed when the year agreed to had expired; that she had a machine of her own and would not agree to leave their machine there beyond the year agreed upon; that about September 4, 1954, Wheelus informed Mrs. Hamrick that this agreement (Exhibit 1) was in full force and effect and he intended to enforce it; that on September 4th she turned said machine to the wall and refused to let it operate and that Wheelus subsequently removed it from said café; that Mr. Hamrick never was authorized to sign the agreement; that Wheelus knew at all times that the only agreement he had regarding the operation of said machine was the oral agreement of Wheelus with her that the machine would stay in her café for one year only and that said agreement was terminated in July, 1954, as of September 4, 1954, when plaintiff Fleda Hamrick refused to give defendants a new agreement; and said agreement was terminated when defendants removed the machine. The court found generally in favor of plaintiffs and cross-defendants on defendants' cross-complaint. It concluded that no valid written agreement was entered into between Mrs. Hamrick and defendants; that the verbal agreement was for one year only and was terminated; and that defendants concurred in said termination. Judgment was entered in favor of plaintiffs and against defendants on their cross-com-

plaint seeking damages for breach of contract, costs and reasonable attorneys' fees.

The main claims on appeal are insufficiency of the evidence to support the findings; that the findings do not support the conclusions or judgment; and that the trial court failed to find on a material issue raised by the pleadings.

■■ It is argued that the finding that Mr. Hamrick owned no interest in said café is not supported by the evidence because it showed the husband worked in said café and did odd jobs, and that accordingly he must have contributed community property to the business enterprise even though it was purchased by Mrs. Hamrick with money left to her by her first husband, citing *Pereira* v. *Pereira*, 156 Cal. 1 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A. N.S. 880]. Although the business was purchased after the marriage of plaintiffs, the evidence shows the city license, bank accounts and employment reports were all carried in the wife's name and she actually operated the business as her own. The husband was paid a few dollars occasionally for his work. The facts are distinguishable from the Pereira case. The evidence was sufficient to support the finding. (10 Cal.Jur.2d 684, § 21; Civ. Code, § 162.)

■■ Although in conflict, there was sufficient evidence to show, independent of the signed agreement, that Mrs. Hamrick did have some verbal agreement with defendants to allow the machine to remain in her place of business for a period of one year, and that Wheelus did wrongfully represent to Mr. Hamrick, who he knew did not own the coffee shop, that the contract was only for one year, and if he would sign it, it was only a form and did not amount to anything; that therefore he did not read it but believed these representations and signed it for his wife without her consent or knowledge. The facts were sufficient to bring the case within the exceptions mentioned in the parol evidence rule that when the terms of a contract have been reduced to writing there can be no evidence of the terms other than the contents of the writing except (1) where a mistake or imperfection of the writing is put in issue by the pleadings; or (2) where the validity of the agreement is the fact in dispute. "This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in Section 1860, or to explain an extrinsic ambiguity, or to establish illegality or fraud." (Code Civ. Proc., § 1856; see also Civ. Code, § 1640.)

■ It is next argued that the finding that Mr. Hamrick never had any authority to sign the agreement is not supported by the evidence because it showed that, at least, he had the ostensible authority so to do or that Mrs. Hamrick was estopped to deny it, citing *Laack* v. *Dimmick*, 95 Cal.App. 456 [273 P. 50]; Civil Code, sections 2317, 2318, and 2334. The testimony is that defendants knew Mrs. Hamrick was the sole owner of the Coffee Cup Café, and knowing this fact he accepted Mr. Hamrick's signature under the representations found to be made. The finding has evidentiary support.

■ Some claim is made that although the name Acme Cigarette Service was signed to the contract and was the named defendant herein, it was Wheelus' testimony that the Acme Service, Inc., took over the outstanding service agreement and accordingly the finding that there was no evidence submitted showing that they were the same corporations is not supported by the evidence. Apparently the entire agreement was terminated or held void and unenforceable. We see no prejudice by the finding.

■ Defendants next argue that the cross-complaint pleads a breach of the agreement by both Mr. and Mrs. Hamrick and that the court failed to find on the issue of Mr. Hamrick's personal liability thereon. The court specifically found Mr. Hamrick signed the agreement on the false representation that the signing of it by him was only to show Wheelus' company that the machine could remain in the café. A recovery against him on the cross-complaint was rejected. This sufficiently disposed of the issue. The evidence, although conflicting, supports the findings, as made, in respect to both plaintiffs and cross-defendants.

Judgment affirmed.

Mussell, J., and Shepard, J., concurred.